## INHABITANTS OF VEAZIE *versus* GIDEON MAYO & *als.*

The statute of 1853, c. 41, § 3, (R. S. 1857, c. 51, § 15,) relating to the construction of railroads across highways and streets in cities and towns, is remedial in its provisions, and applies to railroad corporations previously, as well as those subsequently chartered, unless they had, at the time of the passage of the Act, completed or actually entered upon the construction of their road.

That Act was designed to afford greater security to the public having occasion to use highways and streets across which railroads were to be made; and it was but the exercise of that police power which is always necessarily retained by the people, in their sovereign capacity, for the public safety, and of which they cannot be divested by prior Legislative enactments, nor by chartered immunities.

Before the construction of a road across any street of a city, the written assent of the mayor and aldermen must be obtained, stating the manner and conditions upon which such crossing may be made; and this must be recorded in the County Commissioners' office. But the provision requiring it to be recorded is merely directory, and does not constitute a condition precedent, to be performed before the company are authorized to proceed with the construction of their road.

The city council of Bangor is a body entirely distinct and different from the mayor and aldermen; and the assent of the former to the construction of a railroad, across a street in that city, was nugatory and conferred no authority for that purpose.

REPORT by APPLETON, J.

This was an action of TRESPASS ON THE CASE against the defendants, as "directors" of the Penobscot Railroad Company.

It appeared in evidence that said railroad·was located in 1852. The directors thereupon contracted with certain per-

sons to make and grade that portion of the railroad within the limits of the city of Bangor. On the thirteenth day of May, 1853, they procured an order to be passed by the "city council," permitting them to cross certain streets, stating the manner and the conditions upon which the crossings might be made. But it did not appear that this order was recorded in the County Commissioners' office.

An Act was passed, March 26th, 1853, incorporating a part of Bangor into the town of Veazie. This Act was accepted by the inhabitants upon the territory, June 27, 1853; and the first meeting for the choice of officers was held on the fifth day of July following.

The contractors for making and grading the railroad commenced their work in the summer of 1853; and, in October and November of that year, they made the road across a certain highway in Veazie, which had formerly been one of the streets in Bangor, across which the city council had consented that the road might be made. In grading the railroad across said highway, the workmen cut away and lowered the highway several feet. And, while it was in this condition, one John Phillips, while walking along the highway in the evening, in the use of ordinary care, fell into the excavation and broke his leg, and was otherwise injured. The defendants were directors of the railroad company at that time; and the workmen who made the excavation across the highway were the employees of the contractors, and did the work in performance of the contract.

Phillips afterwards commenced an action against the town of Veazie, to recover damages for his injuries, and recovered about $1650, which the plaintiffs paid before commencing this suit.

The plaintiffs also claimed to recover for sums of money expended by them, subsequently, in repairing said highway.

The defendants put into the case the charter of the Penobscot Railroad Company, and the record of their location, which was filed in the office of the County Commissioners, Dec. 30th, 1852. And they also proved that the defect,

which occasioned the injury, was within the limits of said location.

The case was submitted to the full Court by the parties, with the agreement that if the action was maintainable upon the testimony it should stand for trial; otherwise a nonsuit was to be entered.

*Wakefield* argued for plaintiffs.

*Washburn & N. Wilson* argued for defendants.

1. The charter of the Penobscot Railroad Company was granted prior to the law of 1853, and the company, therefore, were not subject to its provisions. The statute was prospective in its operation, and was not designed to apply to railroad corporations chartered before that time.

2. If designed by the Legislature to apply to companies previously incorporated, the Penobscot Railroad Company was saved from its operation by section 17 of their charter, which provides that the Legislature shall not "impose any other or further duties, liabilities or obligations." If the statute of 1853 does not impose any new duties or liabilities, the plaintiffs cannot recover, for there is nothing in the charter by which their action can be sustained. If that statute does impose new liabilities, it is void as to the defendants, because in violation of the charter.

3. The Penobscot Railroad Company were not only incorporated before 1853; they had completed the location of their road, and it was recorded in the County Commissioners' office in December, 1852. This gave them a complete, perfect, indefeasible right to construct their road within the limits of their location, of which no subsequent Legislature could divest them. If rights thus perfected and secured under the provisions of the charter can be annulled by the Legislature, then the supposed immunities of corporations are without any foundation, and they have no security from legislative encroachment.

4. But, even if the defendants are subject to the provisions of the statute of 1853, they are not liable. They had the

assent of the city council of Bangor, given while the *locus in quo* was within a street of that city, that they might construct their railroad across the street. The subsequent incorporation of that portion of the city into the town of Veazie did not affect the rights conferred. It is not proved or pretended that the contractors were guilty of any negligence, or want of care, in constructing the railroad across the highway. The workmen were not the servants of the corporation, nor of the defendants.

5. The defendants, if liable at all, were liable to Phillips, and not to the plaintiffs.

Other points made by counsel, not having been considered in the opinion of the Court, are omitted.

The opinion of the Court was drawn up by

RICE, J. — This action is brought to recover of the defendants, as directors of the Penobscot Railroad Company, the amount of a judgment recovered against said town of Veazie by one Phillips, for an injury occasioned by a defect in one of the public ways in that town, which defect, the plaintiffs allege, was caused by the operations of the railroad company in the construction of their road. The action is based upon a provision in the 3d section of c. 41, of the Acts of 1853, which is as follows : — "No railroad shall cross any street of a city, not a county road, without the written consent of the mayor and aldermen of the city, which written assent shall determine and state the manner and conditions upon which such crossing may be made; and shall be recorded in the County Commissioners' office. And every such crossing, made contrary to the foregoing provisions, shall be considered a nuisance and liable to all the provisions of law relating to nuisances, and the directors of the company making the same shall be personally liable therefor."

This statute is remedial, and applies to railroad corporations which had been chartered before its enactment, as well as to those of a subsequent date, unless they had actually entered upon the construction of their road, under prior

existing laws. The Act was designed to afford greater security to the public, having occasion to use our public highways while railroads are in process of construction, and to protect such ways from injury, as far as practicable, by the construction of such railroads. It does not conflict with any of the provisions in the charter of the Penobscot Railroad Company, nor impose upon that corporation any additional duties, liabilities or obligations, but was simply designed more effectually to compel a compliance with the provisions of the charter, and, particularly, those contained in the eighth section thereof.

But, independent of and aside from all charter provisions, it is only the exercise of that police power which is always necessarily retained by the people in their sovereign capacity, for the security of the public safety, and of which they cannot be divested by legislative enactment or chartered immunities.

It appears that the city council of the city of Bangor, on the 30th of May, 1853, accepted the report of a committee, prescribing the terms on which this company should be permitted to cross certain streets in that city. This report or order of the city council was not recorded, as required by the Act of 1853, before the company commenced the construction of their road. The provision for recording is directory, and does not constitute a condition precedent, to be performed before the company would be authorized to proceed with the construction of their road. *Pond* v. *Negus*, 3 Mass. 232; *The People* v. *Peck*, 11 Wend. 604; *Hooker* v. *Young*, 5 Cow. 269.

But it is contended by the plaintiffs that the acts of the city council were only preliminary, and not final; that no written permission was given by that body, in the action which was had therein; and, further, that the city council had no authority, under the statute, to act in the premises, and consequently that their action, whatever it may have been, was entirely nugatory.

Section 4th, of the charter of the city of Bangor, provides that the executive power of said city, and the administration of police, with all the powers of selectmen of Bangor, except

Veazie v. Mayo.

as is provided in the eighteenth section of said charter, shall be vested in the mayor and aldermen, as fully as if the same had been particularly enumerated therein.   And all other powers now vested in the inhabitants of said town, and all powers granted by the Act, shall be vested in the mayor, aldermen and common council of said city, to be exercised when acting separately, by a concurrent vote, each board to have a negative upon the other.   The city council includes the common council, as well as the board of Aldermen.   This is a distinct body from the mayor and aldermen.   Its action may be entirely different from that of the board of aldermen; the common council being much larger, numerically, than the board of aldermen, would have the absolute control when acting with that body in the capacity of city council.   Hence, it by no means follows that the action of the city council and that of the mayor and aldermen, would be the same upon the same subject.   The statute required the company, before proceeding to construct their road, to obtain the written assent of the mayor and aldermen.   This they did not do.   The action of the city council, whether preliminary or final, was unauthorized, and consequently unavailing.

According to the provisions of the report, the action is to stand for trial.

Tenney, C. J., Appleton, Hathaway, Cutting, and Goodenow, J. J., concurred.