HIRAM H. HENDERSON AND OTHERS, RESPONDENTS, v. OGDEN CITY RAILWAY COMPANY AND OTHERS, APPELLANTS.

INJUNCTION.—STREET RAILWAYS.—MANDATORY WRIT.—Section 3300, 2 Comp. Laws 1888, providing that the commission or continuance of an act may be restrained, gives to the courts the power in proper cases to issue mandatory as well as preventive injunctions, and a proper case is instanced where defendants surreptitiously piled obstructions on the road bed of the plaintiffs, and defendants continuing to occupy the same therewith; *held*, that by injunction the defendants might be compelled to remove the obstructions.

CONSTITUTIONAL LAW.—SPECIAL LEGISLATION.—The act of a city council in granting to individuals a franchise to lay railways in the streets of the city, under power conferred upon them by a general law of the Territory, is not a local or special law under Act of Congress, July 30, 1886, which provides that the legislatures of the Territories now or hereafter to be organized shall not pass local or special laws granting to any corporation, association or individual the right to lay down railroad tracks, or amending existing charters for such purpose, or granting to any corporation, association or individual, any special or exclusive privilege, immunity or franchise whatever.

ID.—FRANCHISE.—INDIVIDUALS.—There exists no reason in business methods or in the fitness of things why individuals, as well as corporations, should not receive a franchise for, and should not construct and operate, street railways.

ID.—MUNICIPAL CORPORATIONS.—EXCLUSIVE FRANCHISE.—Under a city charter not authorizing the city council to grant franchises that are exclusive, the city council cannot grant an exclusive right of way upon streets in the city, nor *semble* had the Territorial legislature the power to grant such power to the city council.

APPEAL from an order granting an injunction of the district court of the first district.

The power to grant franchises to street railways nowhere appears in the Ogden City charter, except under the general welfare clause, but on March 8, 1888, the general incorporation law gave to all city councils the power to authorize the construction and maintenance thereof. The injunction granted in this case was interlocutory, and was preventive in form in that it required the defendants to desist and abstain from obstructing and encumbering the right of way of the plaintiffs, which in fact did compel the defendants to remove what they had placed on the plaintiffs' right of way. In this way the injunction, although preventive in form, was mandatory in fact. The other facts appear from the opinion.

*Mr. L. R. Rhodes* and *Mr. T. J. Hudson,* for the appellants.

*Mr. Henry P. Henderson* and *Mr. Ogden Hiles,* for the respondents.

ZANE, C. J.:

This is an appeal from an order granting an injunction restraining the defendants from incumbering the alleged road-bed of the plaintiffs' street railway, and from per-

mitting the incumbrance placed thereon by them to remain. The order was made upon the complaint and answer, the oral testimony, and documentary evidence, and after the argument of the solicitors of the respective parties had been heard. The facts of the case, so far as we deem it necessary to state them, are as follows: On the 7th day of August, 1883, the city council of Ogden City adopted a resolution giving to the Ogden City Railway Company permission to construct and operate on Washington avenue a single or double tracked street railway. The resolution contained the following, with other, conditions: "In case such company shall not commence and prosecute the construction of its road as mentioned in this resolution, and shall not prosecute its extensions thereafter at least one mile every four years, the city reserves the right to grant to others the privilege of constructing railways upon all streets or parts of streets not actually occupied by Ogden City Railway Company's tracks." In pursuance of the resolution the company built a single line of railway track on Washington avenue, and in all respects complied with the resolution. The other defendant claims as mortgagee of the Ogden City Railway Company, and is acting under the rights thus acquired. On the 19th day of September, 1890, the plaintiffs obtained from Ogden City permission to lay a single or double track electric railway on Washington avenue and other streets of the city. Under this permission the respondents commenced the construction of their railway on the east side of the street, and on that portion unoccupied by the appellants' track, and laid down a part of it, and excavated and prepared other portions of the road-bed thereof, when the appellants took possession of it, and put ties, and other obstructions thereon. The respondents filed their complaint to enjoin the alleged trespass and incumbrances, and upon a hearing upon an

order to show cause the court granted a temporary injunction, that was restorative as well as preventive.

The contentions of the solicitors as to the rights of the parties upon the foregoing facts impose upon the court the consideration and decision of the following propositions: (1) Was the order appealed from erroneous because it was mandatory as well as preventive? (2) Was the permission given to the respondents to lay down their track contrary to the act of congress prohibiting the territorial legislature from granting special or exclusive privileges? (3) Was the license under which the plaintiffs were constructing their railway invalid because given to individuals? (4) Under the resolution, was the appellants' right of way exclusive?

As to the first proposition: While it is undoubtedly true that injunctions are usually employed to prevent future injuries, they are sometimes granted to restore rights that have been lost. When the advantage to the wrong-doer that constitutes the injury has been gained surreptitiously or by fraud, and the retention of it constitutes a continuing injury, and the law affords no adequate remedy, equity will not withhold such remedial process. In such exigencies mandatory injunctions may issue on interlocutory applications. 1 High, Inj. (3d ed.) §§ 2, 708. The evidence in the record shows that the plaintiffs, while engaged in constructing their road, suspended work during Sunday, and that the appellants in the interval took possession of it, and placed wooden ties and other obstructions upon it, and that the trespass was a continuing one, for which an action at law would not have been an adequate remedy. But counsel insist that the statutes of Utah only authorize a preventive writ; that a mandatory one is not included. The statute is as follows: "An injunction may be granted in the following cases: (1) When it appears by the complaint that the

plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually." 2 Comp. Laws Utah, 1888, § 3300. This statute provides that the commission or the continuance of the act may be restrained. By suffering their property to remain on respondents' road-bed the appellants continued the wrong. The act of placing it there had been done, but appellants were still occupying plaintiffs' works with their ties and other property. They were continuing the trespass. To prevent that continuation a mandatory injunction was necessary. We are of opinion that the legislature, by the law referred to, did not intend to deprive the courts of Utah of any part of that equitable jurisdiction with respect to injunctions recognized by that beneficent system of rules which constitutes equity. We hold that the district courts of Utah have the power, in proper cases, to issue mandatory as well as preventive injunctions.

With respect to the second proposition: The act of congress of July 30, 1886, is as follows: "The legislatures of the territories of the United States, now or hereafter to be organized, shall not pass local or special laws in any of the following enumerated cases." And after mentioning a number of subjects, the following language is used: "Granting to any corporation, association, or individual, the right to lay down railroad tracks, or amending existing charters for such purpose. Granting to any corporation, association, or individual, any special or exclusive privilege, immunity, or franchise, whatever." The first clause quoted, prohibits the Territorial legislature from granting to any corporation, association, or individual, the right to lay down railroad tracks; and because the legislature could not grant to any corporation or individual such right, it is argued that Ogden

City could not give such permission. If that were so, then there would be no way by which any company or individual could obtain the right of way for a railway on any street in Ogden City, or any other city in the Territory, because there would be no other authority to which application could be legally made. The second clause above quoted prohibits the granting of any special or exclusive privilege, immunity or franchise, whatever, by the legislature; and if the legislature may not enact a general law, in pursuance of which a franchise may be secured in each case, by application to the courts (as it has done), then no more companies can be incorporated in the territories. And if the rule is that the city cannot grant the right of way to any particular company or person, because the legislature cannot do so itself, that rule is equally applicable to a large number of other subjects, as to which it cannot act specially. As instances, the legislature cannot grant divorces, or change the names of persons; and if it cannot, by general laws, authorize some other tribunals, or some officers, or offices to exercise the necessary authority, then no more divorces can be granted or names changed; and so as to a great many other subjects. Upon a careful examination of the law under consideration, the intent of congress is apparent. The law was designed to prohibit special legislation, and to prevent the evils thereof. The purpose was not to prevent the legislature from enacting general laws in pursuance of which such special duties might be performed by some other tribunal, or by some officer. We are of the opinion that the city council of Ogden City, in the exercise of a reasonable discretion, may grant the right to lay down railway tracks in its streets.

The consideration and decision of the third point involves the right of natural persons as such to construct and operate railroads. In the nature of things, is there

any sufficient reason why individuals, as such, should not be permitted to construct and operate railroads as well as natural persons through the instrumentality of corporations? A private corporation is a legal person, with power to act as a natural one to the extent that its charter authorizes it to. When the road is owned and operated by a corporation the stockholders own the road through the agency of the corporation, but the use is in the public. When individuals, as such, own and operate it, the property is in them, and the use is then in the public. In the first case, the proceeds of the business, after deducting expenses, is paid to the stockholders as dividends. In the latter, the individuals retain such earnings as are not consumed by expenses. Either can acquire the right of way by contract or in the exercise of the right of eminent domain when the law authorizes it; and neither can acquire it in the latter way without such a statute. The rights of natural persons through the instrumentality of corporations are usually limited to one department or class of business; but without such instrumentality their rights extend to every field which their enterprise, their skill, or business capacity and inclinations may enable and cause them to enter. We do not find anything in business methods or in the fitness of things to prevent natural persons from constructing and operating railroads when they have the inclination, and can command the pecuniary means to do so; nor do we know of any statute in force in Utah, or any rule of law or adjudged case, against it. 1 Rorer, R. R. 8.

Lastly, was the appellants' right of way on the street exclusive? Equality before the law is a fundamental principle of all just governments. Competition in supply and demand regulates wages, prices, and values. The moral sense, the self-interest, and the inclinations of mankind amid the employments, pursuits, and transac-

tions of civilized life give to competition this effect. It is the response of nature to the interrogations of human affairs. It is an important principle of that philosophy known as "political economy;" and laws preventing competition are usually regarded as contrary to public policy, and held to be of no effect. But sometimes the conditions of a particular business prevent competition. Reasonable tariffs and rates might enable one railway to accommodate the public when insufficient to support two or more; and one railway on a street might be sufficient to accommodate the travel on it; but it might be convenient for travel coming in from different neighborhoods to pass to a business center or other neighborhood on the same street for short distances, and they should be permitted to occupy a reasonable portion of it for that purpose. They should not be allowed to obstruct travel in other ways, or to interfere with the approaches to abutting property. To prevent this they should be confined to the common use of the same track. This could be accomplished by the imposition of suitable conditions at the time of granting the permission, or, when such conditions have not been exacted, by a resort to the law of eminent domain. Streets can only be occupied by railroads for public uses, not for private. Railways are permitted on the streets because they are believed to be beneficial to the public in furnishing a prompt, economical, and convenient mode of traveling upon them; and being in the public streets, the public, through its authorities, the city government, has a right to direct the location of their tracks therein, and to determine how much of the streets they may occupy; and such public authorities have also the power to adopt reasonable rules for the regulation of their business. Such railroads and their business are subject to the police power, which the government cannot divest itself of by contract or

otherwise, and, being so possessed of it, it is its duty to make use of it whenever the public good demands that it shall.   The legislature did not authorize the city council of Ogden City to grant to the appellants the exclusive right of way upon the street in question, nor do we think it had the power to do it.   Elliott, Roads & S. 565, 566; *Jackson Co. Horse R. Co.* v. *Inter-state Rapid Transit Ry. Co.*, 24 Fed. Rep. 306.   We find no error in this record.   The judgment of the court below is affirmed.

ANDERSON, J., and BLACKBURN, J., concurred.