## Wytheville.

### WASHINGTON, ALEXANDRIA AND MT. VERNON RAILWAY CO. v. CITY COUNCIL OF ALEXANDRIA.

#### JUNE 14, 1900.

1. INSTRUCTIONS—*Admissibility of Evidence—Objection by Successful Party.*—A party in whose favor the verdict is found on all points is not prejudiced by instructions given by the trial court, nor by its rulings upon the admission of testimony.

2. MUNICIPAL CORPORATIONS—*Regulation of Streets—Continuing Power—Reasonableness.*—The power of a city to control and regulate its streets is a continuing power, to be exercised as often as and whenever the city council may think proper, subject only to the limitation that it must act in good faith, and that the regulation must be reasonable, and not imposed arbitrarily or capriciously, the presumption being in favor of the propriety and validity of what the city has directed to be done.

3. MUNICIPAL CORPORATIONS—*Regulation of Streets—Street Railways—Change of Rails—Mandamus—Judgment non obstante.*—Whether a city which has ample power to control and regulate the use of its streets, and which permits a street railway company to lay its rails of an improved pattern in the streets, can thereafter require the company to replace its rails by others of a different pattern, depends upon the reasonableness of the requirement, and whether it was made in good faith or not. The reasonableness of such requirement is a question for the court and not for the jury, and in a proceeding by *mandamus* to compel the change of rails the court may award the *mandamus*, notwithstanding the verdict of a jury finding that the old rails had been approved by the city in the first instance; that they did not obstruct the ordinary use of the street; that they were of an improved pattern, and that the new rail was not a necessary incident of a proposed street improvement.

NOTE BY THE REPORTER.—Judge Riely was not present when this opinion was delivered, but was present at the argument, participated in the conference, and concurred in the opinion after it was prepared.

Error to a judgment of the Circuit Court of the city of Alexandria, rendered April 22, 1899, on a petition for a *mandamus,* wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*J. M. Wilson* and *J. R. Caton,* for the plaintiff in error.

*Gardner L. Boothe,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Appellant, with the consent of the appellee, constructed a passenger railway over certain streets in the city of Alexandria, in the year 1892, using rails of an improved pattern, known as the tram girder rail, such as were then commonly in use, and as are still used by many street railways.

The City Council of Alexandria, by an ordinance approved July 15, 1898, ordered that a portion of King street, one of the principal thoroughfares of the city, should, for the distance of one square, be repaved with vitrified brick on a six-inch concrete base; and, by another ordinance of the same date, directed the appellant company to put down on the said square, rails to be approved by the Committee on Streets, and to grade and pave on the space between its railway tracks and two feet on each side thereof in a similar manner; and, by another ordinance, approved September 23, 1898, further directed the appellant company to take up its rails on said square in King street, and to lay in their stead "a grooved rail with a groove not exceeding one and one-eighth inches in depth, and with a tram not lower than one-fourth inch below the head, and with the groove of the outline shown by the full lines of the drawing attached to said ordinance.

The appellant company failing to obey, the City Council

presented its petition to the Judge of the Circuit Court of the city of Alexandria for a writ of *mandamus* to compel a compliance with the requirements of said ordinance.

The petition sets forth that the ordinance is a reasonable regulation of the use of the street, which the city has full power to make under section 33 of its charter, and under the general law; that the paving of King street is greatly needed and desired by the citizens of Alexandria, and a grooved rail is a necessary incident to the improvement, King street being the principal business street of the city, with a heavy wagon traffic upon it, and measuring only thirty-seven feet from curb to curb; that owing to the narrowness of the street, traffic is compelled to follow the tracks and rails of the appellant company, and therefore any railway track on King street is to some extent an impediment to its free use, and that for these reasons the rail used should be such as to impede general traffic in the least possible degree.

It is further averred that the rail now used upon King street is such as to prevent vehicles from turning out of the railway track, except with great strain to the wheels, axles and running gear, and jolting in direct crossing. The form of the rails and the nature and extent of the inconvenience they occasion is set out with much detail in the petition, and for the reasons thus stated the petition avers that the rails as at present laid are a nuisance, and an obstruction to the ordinary use of the street.

To this petition the appellant company demurred. The demurrer being overruled, it answered; and thereupon issues were framed to be tried by a jury, as follows:

" 1. Whether or not the several ordinances alleged and set forth in the petition, directing the grading and paving of King street, between the west crossing of Fairfax street and east crossing of Royal street, and directing the Washington, Alexandria and Mt. Vernon Railway Company to remove the rail

now laid upon said square and to substitute a grooved rail of the pattern set forth in said petition, were duly passed, approved and published, as required by provisions of the charter of the city, and whether or not the conditions to the passage of the ordinance for the improvement of said streets have been complied with.

" 2. Whether or not the present rails in use by respondent on King street, between the west side of Fairfax street and the east side of Royal street, will obstruct the ordinary use of said portion of King street, provided the proposed improvement of said portion of King street is made by the city of Alexandria, as set out in the ordinance, approved by the Mayor of said city on July 15, 1898, and entitled 'An ordinance to provide for the grading, paving and curbing of King street from the west crossing of Fairfax street to the east crossing of Royal street, and for the assessment of the costs thereof under the thirty-third section of the city charter as amended by an act of the General Assembly, approved February 7, 1898.'

" 3. Whether or not the present rails in use by respondent on King street between the west crossing of Fairfax street and the east crossing of Royal street, will be and are of approved pattern—that is, of such pattern on account of merit and excellence and adaptation for the purposes for which they are used, as should be approved by the city authorities of Alexandria, provided the proposed improvement of said portion of King street is made by the city of Alexandria, as set out in the ordinances approved by the Mayor of said city on July 15, 1898, and entitled 'An ordinance to provide for the grading, paving and curbing of King street from the west crossing of Fairfax street to the east crossing of Royal street, and for the assessment of the costs thereof under the thirty-third section of the city charter, as amended by an act of the General Assembly, approved February 7, 1898.'

"4. Whether or not the proposed rails mentioned in the ordi-

nance approved on November 23, 1898, and entitled 'An ordi-
nance directing the Washington, Alexandria and Mt. Vernon
Railway Company to take up the rails now laid on King street
from the west crossing of Fairfax street to the east crossing of
Royal street, and to lay a grooved rail, and to grade and pave
the space between said rails and two feet on each side thereof,
said paving to be done with vitrified brick on a six-inch concrete
base, is a necessary incident to the paving and improving of said
portion of King street—that is, whether the public good and the
reasonable and ordinary use of said portion of King street re-
quires that said proposed rails be used, provided said improve-
ment of King street is made as described in said ordinance of
July 15, 1898, instead of allowing the rails now in use by re-
spondent on said portion of King street to remain, provided
said improvement of said portion of King street is made by the
city of Alexandria, as described in said ordinance of July 15,
1898.

" 5. Whether or not at the time the present rails were laid
they were of the most approved pattern and such as were then
commonly in use.

" Were said rails so laid without objection by the city authori-
ties, and with their approval or acquiescence."

The jury found the first of these issues in favor of the City
Council. Upon the second, third, fourth and fifth it found in
favor of the appellant. The appellant, therefore, could not be
prejudiced by any instructions given by the court, or any ruling
made upon the admission of testimony respecting the trial upon
the issues thus found in its favor.

When the cause came on to be heard, after the jury had ren-
dered their verdict, the court rendered a judgment *non obstante
veredicto*, and awarded the writ of *mandamus* in accordance
with the prayer of the City Council of Alexandria. To this
judgment a writ of error was awarded.

We think the demurrer to the petition was properly over-ruled, and upon this subject we shall add nothing to what has already been said with respect to its averments.

The finding of the jury upon the first issue is clearly war-ranted by the proof. Nor do we think there was any error in the final judgment rendered by the court. It is true that the jury have found by their verdict, in response to the issues sub-mitted, that the rails now in use by appellant on King street will not obstruct the ordinary use of that street when the pro-posed improvement is made by the city of Alexandria, as set out in its ordinance of July 15, 1898. They also found that the present rails are of approved pattern—that is, of such merit and excellence and adaptation for the purposes for which they are used as should, in the opinion of the jury, be approved by the city authorities of Alexandria. The jury have also found by their verdict that the substitution of the grooved rail, as pro-posed by the city, is not a necessary incident to the paving and improving of King street with vitrified brick; that the rails in present use were, at the time they were laid, of the most im-proved pattern, and such as were then commonly in use, and were laid not only without objection by the city, but with its approval and acquiescence.

Now, it may very well be that upon all these issues the jury were justified in all their findings by the evidence submitted to them. It might also be that the court was of the same opinion upon the evidence, and yet it is entirely consistent with both these concessions that its judgment, *non obstante veredicto*, should be affirmed.

The real issue to be considered and decided is this: Was the ordinance of the city a reasonable one, regard being had to all the circumstances of the case, or did the City Council, in passing the ordinance, act capriciously and arbitrarily?

Its charter and the general law confer upon the city of Alex-andria ample power to control and regulate the laying out,

repair and use of its streets. "To do so," said this court in *Roanoke Gas Company* v. *The City of Roanoke*, 88 Va. 810, "is a power essentially incident to the existence and well being of every municipal corporation, and powers thus delegated are trusts held for the public good, are continuing, and cannot be contracted away, nor can the municipal authorities bind themselves by contract not to exercise them from time to time as the public good may require, * * * * and of the necessity and expediency of the exercise of such power the City Council and not the court is the judge." *R. F. & P. R. R. Co.* v. *City of Richmond*, 26 Gratt. 83; *Davenport* v. *City of Richmond*, 81 Va. 636; *Charlottesville* v. *Southern Ry. Co.*, 97 Va. 428; *Roller* v. *Harrisonburg*, Id. 582.

In *Burkhart* v. *City of Atlanta*, 30 S. E. 32, the court said: "An incorporated city is a government within a government. It has its own executive, judicial and legislative branches. It is a creature of the State, and can exercise no power that is not derived from its creator.

"Where legislative power is conferred upon it by the State, it is necessary that a degree of freedom should be allowed in its exercise; otherwise, the city would be so hampered in the government of its people as would defeat the very ends of its incorporation.

"Hence it is that the courts will never interfere with the free exercise of such rights as are left to the discretion of a corporate authority unless such authority should go beyond the scope of power delegated, or unless the discretion given should be abused by an arbitrary exercise thereof, and by a plain and unwarranted violation of private rights."

In Dillon on Municipal Corps., section 95, it is said: "When a municipal corporation by its charter is empowered, if it deems the public welfare or convenience requires it, to open streets or make public improvements thereon, its determination, whether wise or unwise, cannot be judicially revised or corrected."

Mr. Justice Brewer, in *St. Louis* v. *Western U. Tel. Co.*, 149 U. S. 465, delivering the opinion of the court, said: " The city is given power to open and establish streets, to improve them, and to regulate their use, &c. The word 'regulate' is one of broad import. It is the word used in the Federal Constitution to define the power of Congress over foreign and interstate commerce, and he who reads the many opinions of this court will perceive how broad and comprehensive it has been held to be. If the city gives a right to the use of the streets or public grounds, as it did by Ordinance No. 11,604, it simply regulates the use when it prescribes the terms and conditions upon which they shall be used. If it should see fit to construct an expensive boulevard in the city, and then limit the use to vehicles of a certain kind, or exact a toll from all who use it, would that be otherwise than a regulation of the use? And so it is only a matter of regulation of use when the city grants a telegraph company the right to use exclusively a portion of the street, on condition of contributing something towards the expense it has been to in opening and improving the streets.

" To the same effect see *Gloucester Ferry Co.* v. *Penn.*, 114 U. S. 196-203. ' The power to *regulate* commerce,' (says Mr. Justice Field, speaking for this court), ' is the power to prescribe the rules by which it shall be governed, that is, the conditions upon which it shall be conducted.'

" If it be said in this case that the city had already regulated the use by prescribing that there should be two tracks, the answer is that the *power of regulation is a continuing power.* It is not exhausted by being once exercised, and so long as the object is plainly one of regulation, the power may be exercised as often as and whenever the Common Council may think proper. The use of the street may be subjected to one condition to-day, and to another and additional one to-morrow, provided the power is exercised in good faith, and the condition imposed is appropriate, as a reasonable regulation, and is not imposed

arbitrarily or capriciously." See, also, *Baltimore* v. *The Baltimore Trust & Guarantee Co., Trustee,* 166 U. S. 1160.

In *Louisville City Ry.* v. *City of Louisville,* 8 Bush. (Ky.) 415, Judge Lindsay, speaking for the court, said: "We will not assume that the city government, in the exercise of the legislative power to regulate the reconstruction of the railway company on Jefferson street, acted capriciously or without sufficient reason. The presumption of the law is that it did not."

It is not necessary to make further citation of authority to show that the City Council was clothed with ample power to control and regulate the streets of the city; that this was a continuing power to be exercised as often and whenever the Council may think proper, subject only to the limitation that it must act in good faith; that the regulation must be reasonable, and not imposed arbitrarily or capriciously, the presumption being in favor of the propriety and validity of what the city has directed to be done.

In Dillon on Mun. Corps., sec. 327, it is said: "Whether an ordinance be reasonable and consistent with the law or not is a question for the court and not the jury, and evidence to the latter on the subject is inadmissible.

But in determining this question, the court will regard all the circumstances of the particular city or corporation, the objects sought to be attained, and the necessity which exists for the ordinance. Regulations proper for a large and prosperous city might be absurd or oppressive in a small and sparsely populated town, or in the country."

Without going into the evidence in detail upon the subject of the reasonableness of the ordinance, we are of opinion that it clearly shows that there was no fraud in its passage; that the city did not act capriciously, but in accordance with what it deemed best to promote the interests confided to it; that the action it took was urged upon it by many of its citizens; that

the rail adopted is that in use by the city of Washington as required by an act of Congress of the United States.

It further appears that representatives of the appellant were invited to attend a meeting of the Committee on Streets and the City Engineer, where the whole subject was carefully considered, and, as a result of their deliberations, the engineer and committee recommended the proposed rail to the City Council, and they thereupon passed the ordinance requiring its adoption.

In view of these facts, it is manifest that the appellant has not overcome the presumption in favor of the reasonableness of the ordinance which it was ordered to obey; that it has not shown that it was passed arbitrarily or capriciously, and the judgment of the Circuit Court must be affirmed.

*Affirmed.*