┌102 795┐
│s104 746│
└104 754┘

┌102 795┐
│108 598│

# Wytheville.

## Newport News & Old Point Railway & Electric Company v. Hampton Roads Railway & Electric Company.

### June 16, 1904.

1. MUNICIPAL CORPORATIONS—*Control of Streets—Code, Section* 1093—*Vested Rights—Presumption.*—The power of a municipal corporation to control and regulate the use of its streets is an inherent and continuing one, to be exercised as often and whenever the municipal Council may think proper, subject only to the limitation that it must act in good faith, and the regulation be reasonable, and not imposed arbitrarily or capriciously. Of this power it cannot divest itself by contract or otherwise, and although it may have granted to a street railway company the right to lay a double track in its streets, this right may be recalled, with impunity, whenever the public interest requires it. This is the general policy of the State, and is in accord with section 1093 of the Code. The presumption of law is in favor of the validity and propriety of a regulation made by a municipal corporation for the use of its streets.

2. STREET RAILWAYS—*Effect of Grant by County to Use Road—Subsequent Incorporation of Territory into Town—Case at Bar.*—The grant by the board of supervisors of a county to a street railway company of the right to place a double line of tracks along a certain road in the county gives to such company no vested right which cannot be impaired or altered by the Council of a town, subsequently incorporated, and comprising that road within its borders, provided the action of the town be reasonable and proper. Such a grant does not confer upon such company the exclusive right to use and occupy such street with its street-car line, and the Council of the town may grant to another street railway company the right to use and occupy such street with its tracks. In the case at bar the town of Phœbus was well warranted in the exercise of its right to promote the welfare of its citizens to grant such right to another company.

3. MUNICIPAL CORPORATIONS—*Street Railways—Crowding Street.*— Whether the establishment of a double track system of electric railway in a street, in addition to a single track system already there, will unduly overcrowd the street, and render it unsafe to travellers thereon, is a matter for the city authorities to deal with, and not a competing corporation seeking to maintain a monopoly in the street.

4. FORFEITURE OF FRANCHISE BY CHARTERED COMPANY—*Unavoidable Delay in Completion of Construction.*—Where the failure of a street railway company to complete its road within the time stipulated in its charter is due to causes extrinsic, and in no wise the fault of the company (as by an injunction of a court), the right of the company is not lost.

5. FORFEITURE OF CHARTER—*Waiver—Right to Enforce Forfeiture.*— The forfeiture of its franchise to lay tracks in a street incurred by the failure of a street railway company to complete its road within a certain time may be waived by the State and the municipality, and the waiver of such forfeiture is not the granting of a new right. Nor can such forfeiture be taken advantage of in a private action, but can be enforced only on behalf of the public at the election of the State.

Appeals from decrees of the Circuit Court of the county of Elizabeth City in two suits in chancery, in one of which the appellant was the complainant, and the appellee was the defendant, and in the other the appellee was the complainant, and the appellant was the defendant.

*Affirmed.*

The opinion states the case.

*S. Gordon Cumming,* for the appellant.

*W. J. Nelms, R. G. Bickford* and *Thomas W. Shelton,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

In October, 1898, the Newport News, Hampton & Old Point Railway Company was the owner of an electric street railway

between the city of Newport News and the Federal reservation at Old Point, which passes through the said city, portions of the counties of Warwick and Elizabeth City, and of the town of Hampton. Its system consisted of a single track, with occasional turn-outs and switches, and a branch line extending from the main line, a distance of about two and one-half miles, to Buckroe Beach, a summer resort. In the month of October, 1898, the Newport News and Old Point Railway and Electric Company, for a valuable consideration, purchased, all and singular, the rights, privileges, franchises and properties of the said Newport News, Hampton and Old Point Railway Company, and immediately after its purchase began to improve its property, preparing plans for the eventual double-tracking of the entire system.

This new company obtained a franchise to double track and parallel itself in the city of Newport News. In May, 1899, it obtained from the Council of the town of Hampton the right to construct and operate an additional street railway track on, over, and along Armistead avenue and Queen street, being the streets theretofore occupied by a single track; and during the same month (May, 1899), obtained from the Board of Supervisors of Elizabeth City county the right to double track where there had been theretofore a single track, "from Gatewood's corner to Libby's corner, on Mellen street, on, over, and along the county road now occupied by said company." A portion of this latter grant from the Board of Supervisors was over certain county roads and streets, which on April 1, 1900, became part of the town of Phœbus, which town was incorporated by an act of the General Assembly of Virginia, approved January 22, 1900, and in force on and after April 1, 1900. Acts 1899-1900, p. 98.

That portion of the route authorized to be double-tracked by the Board of Supervisors, described as "from Gatewood's corner to Libby's corner, on Mellen street," is a distance of 7,176 feet. The distance from Gatewood's corner to the corporation line of

the town of Phœbus is 2,994 feet, approximately one-third the entire double-track route granted by the Board of Supervisors of Elizabeth City county, and from the corporate line to the intersection of Mallory and County streets is 2,401 feet, and from the intersection of Mallory and Mellen streets to Libby's corner, in Mellen street, is 1,681 feet.    The Newport News & Old Point Railway and Electric Company has maintained a switch, or turn-out, on Mallory street, between Mellen and County streets, thus affording a double-track of this block, and prior to January 1, 1900, it, acting under the authority of the order of the Board of Supervisors, had double-tracked and was operating its cars on such double-track from Gatewood's corner to the intersection of County and Mallory streets, but it did not at that time, nor up to the beginning of this litigation, double-track the bed of Mellen street, as it had leased a piece of track running on County street, one block distant from Mellen street, from the Citizens Railway, Light & Power Company, and was using that for the return route for its cars from Old Point to Hampton, and now owns the track on County street, so that, at the beginning of this litigation, the Newport News & Old Point Railway and Electric Company had not exercised the right conferred upon it by the order of the Board of Super-visors to lay a double track in Mellen street, but for more than a year had only operated thereon a single track, upon which its cars ran in going to Old Point from Newport News, and in returning passed over and along County street, one block from Mellen street, and in the meantime had taken up its old track and replaced it with new rails as a single track, and thereby indicated its purpose to continue to run its cars in only one direction along Mellen street.    At the session of the General Assembly of Virginia of 1899-1900 (Acts 1899-1900, p. 445), the Hampton Roads Railway & Electric Company was granted a charter, and authorized to construct and operate, or otherwise acquire, a line of street railway in the city of Newport News,

the town of Hampton, in the town of Phœbus, and in the coun-
ties of Elizabeth City and Warwick; and it has constructed the
larger portion of its line, through the agency of the Vandegrift
Construction Company.   In December, 1900, this last-named
company was granted, by the Council of the town of Phœbus,
the right to construct and operate a double-track street railway
system within the limits of the said town, over certain streets
therein, designated as "beginning on Mallory street, opposite
Segar street, a double track on, over, and along Mallory street
from the said Segar street to the farthest side of Mellen street
from said starting point; a double track on, over, and along
Mellen street from Mallory street to and across Water street,
and into Mill Creek as far as the boundary line of the town of
Phœbus extends.   .   .   .   For the purposes herein named,
said company is hereby authorized and empowered to parallel
or straddle any existing track upon said streets, or that may be
placed upon the same hereafter.   .   .   .   The said company
shall, unless prevented by the mandate of the highest court hav-
ing cognizance of the litigation (should there be any), operate
at least one track along the streets above mentioned, and all of
its cars bound in a westerly direction shall go over said line.
.   .   .   And if it shall be finally determined that the said
company has the legal right to operate a double-track street rail-
way on Mellen and Mallory streets, then that part hereof which
permits the said company to operate a railway on Segar street
and Willard avenue, shall become null and void six months
from the date of such final determination   .   .   .   unless
the said railway company shall operate a fifteen minutes' sched-
ule on said Mallory, Mellen and Segar streets, and Willard
avenue," etc.

Under the provisions of section 8 of the above-mentioned or-
dinance, it was provided, that the Hampton Roads Railway &
Electric Company commence its work in Phœbus within one
year, and that its road be completed within two years from Janu-

ary 1, 1901, and in December, 1901, shortly before the expiration of the first year, and before it had begun any work within a mile and a half of Mellen street, the Hampton Roads Railway & Electric Company began to lay its track on Mellen street on both sides of the existing single track of the Newport News and Old Point Railway and Electric Company; whereupon the Newport News and Old Point Railway and Electric Company enjoined the Hampton Roads Railway and Electric Company and the Vandegrift Construction Company from proceeding with this work, upon the ground that it would constitute a deprivation of the vested rights of the complainant. Upon the granting of this injunction the general manager of the Newport News and Old Point Railway and Electric Company, on the next day put a force of men to work tearing up the work done by the Hampton Roads Railway and Electric Company, and to install a double track on Mellen street; whereupon it was enjoined by the Hampton Roads Railway and Electric Company. By the terms of the injunction order granted, the Newport News and Old Point Railway and Electric Company against the Hampton Roads Railway and Electric Company and the Vandegrift Construction Company, it was subject to dissolution on a hearing after 24 hours' notice, but no steps were taken to dissolve either of the injunctions until 1903, when the two causes were brought on to be heard together in vacation before the learned judge of the Circuit Court of Elizabeth City county, and by the decree then entered the injunction theretofore awarded the Newport News and Old Point Railway and Electric Company was dissolved, and the injunction awarded the Hampton Roads Railway and Electric Company against the first-named company was continued. It is from this decree that the case is now before us for review, upon an appeal allowed the Newport News and Old Point Railway and Electric Company.

The decision of the case turns upon whether or not the appellant, by reason of the grant to it by the Board of Supervisors

of Elizabeth City county, had a prior and exclusive vested right
to use and occupy Mellen street with a double track system of
electric railway.   The purpose of the ordinance of the Council
of Phœbus in conferring the rights it did upon the appellee com-
pany was to obtain a better system of electric car service on
Mellen street to meet the needs of the travelling public and busi-
ness interests in the town of Phœbus.   The Council of Phœbus,
on April 27, 1900, requested the president of the appellant com-
pany to so order the running of its cars that those from Old
Point might run along Mellen street, so as to give a more satis-
factory car service on that street, but no attention was paid to
this request, and the original method of running the cars was
persisted in, certainly up to the time this litigation began.

The only authority the Board of Supervisors of Elizabeth
City county had to confer the right upon appellant to occupy
with its tracks any of the roads or streets within the limits
of the county, grows out of the terms of the charter of appellant,
which provides that before appellant could occupy the county
roads and highways in the counties of Elizabeth City and War-
wick, the consent of the Board of Supervisors of the respective
counties should be first obtained to the location of the line or
lines on the streets and highways within their respective limits
and jurisdictions.   The fifth section of the charter by which the
company is authorized to locate its line or lines on the streets and
highways in the counties and towns through which it proposed to
run its line or lines, provides that it might be done, "after having
first obtained the franchise, or permission so to do, from the
duly constituted authorities"; and further provides that "for
the purposes of this act the said company shall, and is hereby
expressly invested with all the powers, rights, privileges and
franchises conferred, and subject to all the restrictions imposed
by chapter 46 of the Code of Virginia of 1887, and the Acts of
the General Assembly of Virginia amendatory thereof, and other
laws of the State of Virginia as far as applicable."   Section

1093 of the Code, which is in chapter 46, above referred to, is as follows:

"Sec. 1093. *Streets, etc., of city or town not to be occupied without their assent; damages to lots to be paid owners.*—No company shall cross or occupy with its works the streets or alleys, public or private, of any city or town, without the assent of the corporate authorities thereof, unless such assent be dispensed with by special provision of law; and in case any lot or lots along the line of such streets or alleys, shall by such occupation or crossing, be impaired in value, such company shall, before crossing or occupying such streets or alleys, make compensation therefor to the owner of the same; said compensation, if the parties cannot agree upon the same, to be ascertained in the mode prescribed by this chapter."

This section indicates an adherence to the general policy of this State to require municipal consent to the occupancy of its streets by a railway company. In accordance with this policy it was held in *Wash. & Alex. & Mt. V. Ry. Co.* v. *City Council of Alexandria,* 98 Va. 344, 36 S. E. 385, that the power of a city to control and regulate its streets is an inherent and a continuing power, to be exercised as often as and whenever the City Council may think proper, subject only to the limitation that it must act in good faith, and that the regulation must be reasonable, and not imposed arbitrarily or capriciously, the presumption being in favor of the propriety and validity of what the city has directed to be done.

In *R., F. & P. R. R. Co.* v. *City of Richmond,* 26 Gratt. 83, it is said, the right in a municipality to control the use of the streets, and to provide for the safety, comfort and general welfare of the citizens therein residing, is an inherent right. In that case, which was appealed to the Supreme Court of the United States (96 U. S. 521, 24 L. Ed. 734) the decision of this court was affirmed, which held that the ordinance of the city of Richmond forbidding the use of steam engines upon its streets

by the R., F. & P. R. R. Co., though the railroad company had
so used Broad street for many years, and claimed the right
to continue such use by virtue of its contract with the city, was
a valid exercise of the authority in the city to control the use of
its streets; the court being of opinion that the ordinance did
not impair any vested right conferred upon the company by its
charter, nor deprive the company of its property without due
process of law.

In *Baltimore* v. *Baltimore Trust, &c. Co.,* 166 U. S. 673, 17
Sup. Ct. 696, 41 L. Ed. 1160, it was held, that the right of a
street railway company under an ordinance to lay tracks in the
streets is subject to reasonable regulations by subsequent ordi-
nances as to the use of the streets, and that, although a street
railway company had been granted a franchise to lay a double
track in a street, a subsequent ordinance restricting its right to
the use of a single track is not an unreasonable restriction of the
company's right, or a material modification of a prior ordinance
granting the company permission to lay double track in the
streets for many miles, and that a failure to provide any com-
pensation to the street railway company for taking up one track
in the street in which it has laid a double track, after notice from
the city authorities to permit but one track on the street, does
not make the ordinance unreasonable.   According to that case,
which is a well-reasoned one, it would have been a valid exer-
cise of the discretion of the Town Council of Phœbus to provide
that appellant should not lay a double track in Mellen street,
even had that right been conferred by a previous ordinance of the
town; and that it would not have been a violation of any vested
right in appellant, growing out of the previous ordinance.   The
right of the Board of Supervisors to control Mellen street, after
it had been severed from the county of Elizabeth City and be-
came a part of the territory within the limits of the town of
Phœbus, ceased, and the control of Mellen street was from that
time as absolutely under the control of the town authorities of

Phœbus·as if the town had been incorporated before the charter of appellant was granted.

In *Ogden City Ry. Co.* v. *Ogden City,* 7 Utah, 207, 26 Pac. 288, the city granted the plantiff railway company the right to lay a track in a street, and afterwards granted defendant the right to lay a double-track railway in the same street. Before defendants commenced work, plaintiff sought to enjoin them from laying their track, and to have the ordinance giving them a right of way declared void, alleging that it (plaintiff) had constructed a single track, and that, if it were to lay down its other track, and defendants their two tracks, other modes of public travel would be obstructed, and also that defendants' wires and poles would interfere with plaintiff's rights as the owner of property abutting on the street. Held, "that a demurrer to the complaint was properly sustained." This decision is in accordance with the principle enunciated in the authorities cited above, that a municipality has an inherent and continuing right to control and regulate the use of its streets within its limits. In *Henderson* v. *Ogden City Ry. Co.,* cited in the last-named case, the opinion says, such railroads and their business are subject to the police power, which the government cannot divest itself of by contract or otherwise, and, being so possessed of it, it is its duty to make use of it whenever the public good demands that it shall. The Legislature did not authorize the City Council of Ogden City to grant to the appellants the exclusive right of way upon the street·in question, nor do we think it had the power to do it. 7 Utah, 199, 26 Pac. 286.

Whether the establishment of a double track system of electric railway in a street, in addition to a single track system already there, would unduly overcrowd the street and render it unsafe to travellers thereon, is a matter for the public to deal with, and not a competing corporation seeking to maintain a monopoly in the street. *Grand Rapids Bridge Co.* v. *Pranze,* 35 Mich. 400, 24·Am. Rep. 585.

In Elliot on Roads and Streets, sec. 745, the learned author says: "There is some conflict in the decided cases upon the question of the power of the Legislature to grant an exclusive right to a street railway company to occupy and use a highway. Some authorities hold that the Legislature cannot create a monopoly by granting an exclusive privilege, and there is much reason for this doctrine (citing numerous authorities). At all events, the construction should be liberal in favor of the public, and strict as against the corporation claiming an exclusive privilege or monopoly." Again, in section 746, the same author says: "The effect of a grant to use a designated part of a highway is to license the company first in point of time to occupy and use the designated space, but it does not follow from that that the statute creates a monopoly, since others may occupy other parts of the same highway." Again, in section 750, he says: "If the company which secures the first grant actually occupies the streets it is authorized to use, then there is much reason for affirming that its right to the part of the street actually occupied and used is paramount and exclusive. By actually taking possession of the street and using it for the accommodation of the public, the company first in point of time does such acts as vests its right. But to have this effect, the company, as it seems to us, must take possession in good faith, and for the purpose of constructing and operating such a railway as the grant contemplates. A colorable possession, taken solely for the purpose of keeping out other companies, and unaccompanied by acts indicating an intention to furnish reasonable facilities for the accommodation of the public, ought not to be regarded as sufficient to vest a right under the general license." In section 751, the same author, in discussing "When grant may be made to other companies," says: "We very much doubt whether a general grant which would prevent the Legislature or the municipal authorities from granting privileges to other companies would be valid in cases where the right to use the high way is left en-

tirely to the licensee, for this, as we believe, would be a surrender of the police power which the constitution will not permit. The Legislature cannot bind itself not to legislate for the welfare of the public, and it would seem to follow that it cannot rightfully place itself in a position where it cannot make provision for the public necessities. If it cannot do this, then it cannot make a grant which leaves it entirely in the discretion of a private corporation to provide, or decline to provide, the facilities for travel upon the highways which are demanded by the public welfare. We think there is sufficient reason for affirming that the Legislature must retain the power to provide for the necessities of the public, and that a general grant to occupy highways is only effective when something is done vesting the right granted and securing what the public requires. Until something is done vesting the granted privilege, it is within the legislative power to secure the welfare of the public by granting the necessary license to another company, although there may be a prior general grant."

In the case at bar the appellant, for about eighteen months, had used only a single track on Mellen street, the cars thereon running in but one direction and returning, as has been remarked, upon another street, and did no act indicating an intention to furnish reasonable facilities for the accommodation of the public on Mellen street, until appellee, in the exercise of the right conferred upon it by its charter and the ordinance of the Council of Phœbus, began work in locating its tracks upon Mellen street, and had been enjoined at the suit of the appellant from further proceeding with its work. There is nothing whatever in the charter of appellant, or in the permit granted it by the Board of Supervisors of Elizabeth City county authorizing it to lay a double track upon Mellen street, that indicates an intention on the part of the granting power to confer upon appellant exclusive right to use and occupy Mellen street for the operation of a street car line. There is nothing in the acts done

by appellant indicating a purpose on its part to provide the necessary facilities for the travelling public on Mellen street, and, under the circumstances, the Council of Phœbus was well warranted in the exercise of its right to promote the welfare of its citizens, by conferring upon the appellee company the right to occupy the street with its tracks.    If, as contended for appellant, the appellee has forfeited any of its rights under its charter or the ordinance of the town of Phœbus, by reason of its failure to complete its line within the time limited in the charter or ordinance, the forfeiture could undoubtedly have been waived by the State of Virginia and the town of Phoebus, and the waiving of the forfeiture is not the granting of a new right; therefore, the provision of the new Constitution, to which appellant refers, does not apply.    The charter of appellee has been so amended as to extend the time for the completion of the appellee's road to 1906, and section 8 of the franchise granted it by the town of Phoebus was so amended as to give two years and six months after January 1, 1901, in which to complete the work in that town.    The construction of appellee's railway in Mellen street was stopped by the injunction sued out by the appellant. "Where the failure to complete the road is due to extrinsic causes and in no wise the fault of the company, for example, by injunction   .   .   .   the right of the company is not lost." 23 Am. & Eng. Enc. of L. (1st Ed.) 973-4.    If from any cause appellee has forfeited its right to lay its tracks and operate its cars on and over Mellen street, such forfeiture cannot be taken advantage of in a private action, and can only be enforced on behalf of the public at the election of the State.    *Pixley* v. *Roanoke Nav. Co.,* 75 Va. 320; *The Grand Rapids, &c. Co.* v. *Pranze, supra; The People* v. *Albany & Ver. R. Co.,* 24 N. Y. 261, 82 Am. Dec. 295; *Mackall* v. *C. & O. Canal Co.,* 94 U. S. 308, 24 L. Ed. 161; Nellis on St. Rys. 127.

It abundantly appears in the record that from the coming into existence of the appellee company it has been obstructed,

wherever obstruction was possible, by the appellant company in the progress of its work at many points along its line, while in its failure to construct a double track on Mellen street the appellant company considered only the item of cost to itself, and the advantage to it in suppressing competition, and seems not to have considered the convenience or necessity of the travelling public in the town of Phœbus. The facts and circumstances surrounding appellant at the time this litigation was begun indicate that the public interest was never even remotely considered.

The argument of the case has taken a very much wider range than the issues to be determined justify, and, therefore, we have not undertaken to consider all of the many questions discussed, nor to review the innumerable authorities cited.

Upon the whole case we are of opinion that the decree appealed from is right, and should be affirmed.

*Affirmed.*