# Richmond

NORFOLK AND WESTERN RAILWAY CO. V. CITY OF BRISTOL.

November 12, 1914.

1. HIGHWAYS—*Acquisition by Prescription—Railroads—Crossing.*—When a railroad intersects a populous city street, and steps leading down the slopes of a cut on both sides of the railroad have been in constant, extensive and uninterrupted use by the public for more than twenty years, and such use has been plainly recognized by the railroad company, the public acquires a prescriptive right to use the crossing which cannot be taken away by the company.

2. HIGHWAYS—*Foot-Way—Code, Section* 1294d, *Clause* 61.—A passway used by footmen only is a highway within the meaning of section 1294d, clause 61, of the Code (1904) giving to cities and towns the right to require railroad companies to station flagmen where any highway or street is crossed within the corporate limits of such city or town.

3. HIGHWAYS—*City Street—Regulation and Control.*—A passageway over a railroad track in a city which has become one of the highways of the city is subject to the reasonable regulation and control of the council.

4. RAILROADS—*Highway Crossing—Changes—Public Benefit.*—When the public has acquired the right to use a railroad crossing, the test as to the changes to be made from time to time in the crossing is generally to be found in the varying needs and requirements of the public, and not in the increased traffic and business of the railroad company.

5. MUNICIPAL CORPORATIONS — *Railway Crossing — Changes — Public Benefit—Continuing Duty.*—The duty of municipal corporations to regulate and control the use of public highways on the one hand, and of railroad companies to respond to such regulation and control on the other hand, are continuing duties and are to be exercised with regard to the convenience and necessities of the community.

6. MANDAMUS—*Railroads—Obstructing Highway.*—Mandamus is the proper remedy to compel a railroad company to replace steps forming a part of a public highway which have been removed by the company or its servants.

Error to a judgment of the Corporation Court of the city of Bristol on a petition for a mandamus. Judgment for the petitioner. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Lucian H. Cocke* and *S. V. Fulkerson,* for the plaintiff in error.

*Floyd H. Roberts,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This is a writ of error to a judgment rendered in the Corporation Court of the city of Bristol, directing the issuance of a peremptory writ of mandamus requiring plaintiff in error to replace certain steps and to maintain a flagman at a certain point on plaintiff in error's railway where Edmond street and the tracks of plaintiff in error intersect and cross in the city of Bristol, Va.

It appears that Samuel E. Goodson, on the 9th day of December, 1851, conveyed to the Virginia and Tennessee Railroad Company, the predecessor in title to plaintiff in error, a right of way for a railroad eighty feet in width which deed embraces that portion of the right of way that is the subject of this controversy and across which a footway is claimed by defendant in error in this proceeding. Some time prior to the year 1856 said Goodson caused to be made by one E. Winston a plan and map of Goodsonville, which map is a part of the present map of the defendant in error, the city of Bristol, and in the year 1856 the land covered by "Winston's map," as well as adjoining lands, was incorporated under the name of

the town of Goodson (Acts 1855-56, p. 190.)   By an act
of the legislature in 1890 (Acts 1889-90) the name of the
town of Goodson was changed to that of the city of
Bristol, and the controversy here is as to the right of
the city to an easement in the public of a footway for
pedestrians over and across the tracks of plaintiff in
error where they intersect and cross Edmond street, and
to compel plaintiff in error to repair certain steps for
the use of pedestrians and to maintain a flagman at that
point.

The cause was heard before the lower court upon the
pleadings and the evidence taken on behalf of the re-
spective parties, without a jury, and at the October, 1913,
term of the court the order and judgment of which plain-
tiff in error complains was entered.

In a written opinion made a part of the record the
learned judge below has so fully and clearly discussed
the law and the facts of the case, and so satisfactorily
presented the views entertained by this court with re-
spect to the questions involved, that we adopt the same
as an entirely sufficient and satisfactory disposition of
the controversy.

"This is an application by the city of Bristol for a
writ of mandamus to compel the Norfolk and Western
Railway Company to comply with the following city or-
dinance, which was passed on the 13th day of May, 1913,
to-wit:

" 'Whereas, in the opinion of this council the place
where Edmond street and the tracks of the Norfolk and
Western Railway Company intersect and cross in the
city of Bristol, Virginia, is considered as dangerous; and

" 'Whereas, said crossing has been rendered more
dangerous since said company removed the steps on the
northern side of said crossing; and

" 'Whereas, in the opinion of this council, the public

interest requires that a flagman be stationed and kept at said crossing;

" 'Therefore, be it resolved that said Norfolk and Western Railway Company be required, and said company is hereby ordered, to restore and repair said steps, and to put said crossing in proper condition for safe and speedy travel, and to station and keep at said crossing a flagman between the hours of 7 o'clock, a. m., and 10 o'clock, p. m., of each day.

" 'Resolved further that this resolution shall take effect on and after June 15, 1913.

" 'Resolved further that a certified copy hereof be given to the general manager of said company as written notice of said regulation and requirements.'

"The railway company was duly notified of the foregoing ordinance but declined to meet its requirements, and thereupon this proceeding was instituted.

"It is well to have in mind at the outset, that while the pleadings and the evidence have appeared to take a somewhat wider range, the real issue is whether the city is entitled to have the steps restored and the flagman stationed, as demanded in the ordinance.

"The case was heard without a jury, and upon a careful consideration of the evidence I find that the weight of it warrants the following statement:

"Edmond street, as the same appears on the maps filed with the record, is a duly established street, extending up to the defendant company's right of way on each side thereof, and the intersection of the street and right of way is very nearly in the heart of the populated section of the city. This street and the main line of what is now the Norfolk and Western Railway leading into Bristol were located about the same time. Which of these locations was prior to the other in point of time can not be certainly determined from the evidence, but

for fifty years or more the public has used Edmond street as a public thoroughfare for vehicles and pedestrians up to the right of way on each side thereof, and has used the right of way as a public crossing for pedestrians at that point for a similar length of time.  For twenty-five years or more the city has maintained a board walk on Edmond street, extending up to the right of way on both sides.  The crossing in question has not been used for vehicles because there is a railroad cut at the point of intersection of the street and right of way, and the approaches to the crossing have not been graded so as to make it possible for vehicles to pass over the tracks.  As appears from testimony referring to one of the maps filed in evidence, which is of record and is the oldest map in existence covering that part of the city, Edmond street and Mary street, which are parallel streets, were laid out at the same time and by the same land owner, and in the outset there was no way for vehicles to cross the railroad on either of these streets, but subsequently an overhead bridge was constructed on Mary street.  The Edmond street crossing, being centrally located, and being the only one between Mary street and State street (a distance of about 2,000 feet) is one of much public importance and usefulness.  For many years, and until recently, there were steps of some sort leading down the slopes of the cut on both sides to the railroad.  These steps have been kept in repair, sometimes by the city and sometimes by the railroad company, but the evidence shows that for more than twenty years the city and the railroad company have regarded the steps and the crossing at the point in question as being subject to the use of the public as a means of passing to and from opposite sides of the track. This use has been constant, extensive and uninterrupted until the defendant removed the steps on the north side of the tracks.

"Originally, there was only one railroad track at this crossing, but subsequently, from time to time, the defendant company and its predecessors have enlarged the Bristol yards, adding several additional tracks at the crossing, and recently still another track was laid there resulting in the cutting down of the bank on the north side; and the defendant company on its own motion, and without any permission from the city, removed the steps and left the bank in such condition that pedestrians can no longer use the crossway at all.

"It appears that prior to the time of taking down the steps, the defendant company and its predecessors had never denied the right of the public to use the crossing in question, and, upon the contrary, had pursued a course of conduct which indicated a plain recognition of such right. As far back as the fall of 1894, the railroad company through its local agent, asked permission of the city council to remove the steps on each side of the railroad track at the intersection of Edmond street, and this permission was refused by the council on the ground that it would not be just to the citizens to grant it. Subsequently, in 1905, during certain negotiations looking to the construction of an overhead bridge at Edmond street, the defendant company, through its general manager, made a proposition with reference to the improvement of the overhead bridge at Mary street, but conditioned this proposition upon the railway company's being permitted to fence its right of way on both sides at the intersection of Edmond street. The city refused such permission. It also appears that after the railway yards were enlarged and the handling of railway cars at the crossing in question became frequent enough to require it, the railway company had its employees to separate the cars at the crossing and leave a way for people to pass, so as not to block the same. Recently, a

special officer placed on the yards to keep trespassers off declined to arrest a man on the crossing, stating that he had instructions not to arrest any persons at that point. The defendant claims in its answer that the use which the public has been making of the track at this crossing has been permissive only, and some evidence was introduced tending to support this contention, but I think the clear weight of the evidence is to the contrary.

"In the light of the evidence, the question whether the railroad was located prior to the location of the street becomes immaterial. If the defendant did not take its right of way from Col. Goodson, the original owner, subject to a previous dedication of the street by him, and if the defendant company and its predecessors have not pursued a course of conduct which, in itself, amounts to a dedication of the street at that place, the public has certainly acquired a prescriptive right to use the crossing, and the result for the purposes of this action is the same in either case. See *Bunting* v. *Danville,* 93 Va. 203 [24 S. E. 830] (Instruction No. 5); *Basic City* v. *Bell,* 114 Va. 163, [76 S. E. 336]; 1 Elliott on Roads and Streets (3rd ed.), secs. 188, 191; Elliott on Railroads, sec. 425; Jones on Easements, secs. 280, 457; *Gay* v. *Boston, &c. R. Co.,* 141 Mass. 407, 6 N. E. 236, and note to this case in 35 Am. & Eng. R. Cases, p. 320.

"It is true that the crossing in question has thus far been used only as a footway, but that fact does not make it any the less, in legal contemplation, a public way, or any the less a 'highway' within the meaning of the Virginia statute providing for flagmen at railroad crossings.

"The statute, Virginia Code, sec. 1294d, clause 61, so far as it is germane here, reads as follows:

" 'Whenever, in the opinion of the council of any city or incorporated town, the public interest requires that . . . a flagman be stationed and kept at the place

where any highway or street is crossed within the corporate limits of such city or town by any railroad heretofore or hereafter constructed, it shall give the superintendent or manager of the railroad written notice that the same is required, and the corporation shall, within the time prescribed in such notice . . . keep a flagman at such crossing during such hours as it may require.'

"The foregoing section deals only with crossings in cities and incorporated towns. There is nothing to indicate that the term 'highway' used in the statute is not to be taken in its generic sense, and taken thus it includes passageways used by footmen only. See Elliott on Roads and Streets, sec. 4; Jones on Easements, sec. 420; *Tolbert* v. *R. & D. R. Co.*, 31 Gratt. (72 Va.) 691; 4 Words and Phrases, title 'Highways,' pp. 32-92.

"It is immaterial, so far as this proceeding is concerned, whether the crossing be treated as a part of Edmond street as originally laid out, or as a public way acquired by prescription. In either view, this passageway, which so vitally affects the public enjoyment and usefulness of Edmond street on both sides of the railroad track, has become one of the highways of the city and as such is subject to the reasonable regulation and control of the council. See *Washington, &c. R. Co.* v. *Alexandria*, 98 Va. 344 [36 S. E. 385]; 1 Elliott on Roads and Streets, secs. 540, 1009; *Newport News, &c. Co.* v. *Hampton, &c. Co.*, 102 Va. 795 [47 S. E. 839]; *R. F. & P. R. Co.* v. *City of Richmond*, 26 Gratt. (67 Va.) 99.

"The fact is developed in the evidence that the use of the crossing by the public in the present advanced state of railroad activity there, with the numerous tracks which have now been constructed, and other changes which have now been made at that point, will seriously hamper and interfere with the defendant's business;

but I do not think this fact affects the rights of the city.
To sustain the contention based on this fact would be to
reverse the rule applicable in such cases.   When the
public has acquired the right to use a railroad crossing,
the test as to the changes to be made from time to time
in the crossing is generally to be found in the varying
needs and requirements of the public and not in the in-
creased traffic and business of the railroad.   The duty of
municipal corporations to regulate and control the use
of public ways on the one hand, and of railroad com-
panies to respond to such regulation and control on the
other hand, are continuing duties and are to be exercised
with regard to the convenience and necessities of the
community.   See *Charlottesville* v. *Southern Ry. Co.,* 97
Va. 428 [34 S. E. 98]; *Washington, &c. Ry. Co.* v. *Alex-
andria, supra; Newport News, &c. Co.* v. *Hampton, &c.
Co., supra;* 1 Elliott on Roads and Streets, secs. 249
(n. 59,), 1014; *R. F. & P. Co.* v. *Richmond, supra.*

"The steps in question were a part of the way and had
been used by the public, under the circumstances here-
tofore detailed, for twenty-five years or more.   The cut-
ting down of the bank and removal of the steps was an
absolute destruction of the usefulness of the crossing.
A case stronger than this in some respects, from the
city's standpoint, perhaps not as strong as this in other
respects, but involving much the same principles, is
quoted as follows in Jones on Easements, sec. 475:

" 'Where a railroad company constructed for its own
use a bridge across a stream in a city, building under
and attaching to the main structure a footway for the
public use, the company itself having no use for such a
passway, there was a dedication of the footway by the
railroad company to the public use; and the city having
lighted up the way with gas, and by its officers caused
the railroad company to make repairs, and aided in con-

structing the approaches, there was as complete an acceptance by the city of the dedication as was compatible with the right of the owners. The railroad company having thus maintained the footway for more than thirty years, the city acquired the right to its use by prescription. The company having torn down the old bridge and erected a new one in its stead, leaving off and declining to rebuild the footway, in an action brought by the city for that purpose the chancellor properly required the company to restore the way. While the restoration of such an artificial way can not be directed where the structure falls from decay or is necessarily removed, yet where the deliberate agency of the owner, unaffected by the conditions mentioned, is the destroying power, the restoration may be required.'

"I am of opinion that the petitioner has established by the evidence the right of the public to the use of the crossing in question; that the defendant had no right to remove the steps; that the city had the right under the law to require the stationing of a flagman at that point; and that it is now the duty of the railroad company to restore the steps (the description of which sufficiently appears in the evidence) and to station such flagman. This being true, there would seem to be no doubt that a writ of mandamus is the proper remedy. See *Washington, &c. R. Co.* v. *Alexandria, supra; Portsmouth W. Co.* v. *Portsmouth,* 112 Va. 158 [70 S. E. 529] ; 2 Elliott on Roads and Streets, sec. 1013; 3 Elliott on Railroads, sec. 1006.

"In accordance with the views above expressed, a peremptory writ of mandamus will be awarded against the defendant requiring it to replace the steps and to station a flagman as prayed for in the petition."

The judgment of the corporation court complained of is affirmed.

*Affirmed.*