THE STREET RAILWAY COMPANY OF GRAND RAPIDS v. THE WEST SIDE STREET RAILWAY COMPANY OF. GRAND RAPIDS ET AL.

*Exclusive right to lay track in streets—forfeiture—connecting lines.*

When a regularly incorporated street railway company becomes entitled to the exclusive right to lay its track in certain streets upon the relinquishment or forfeiture of such right by another company, it is thereafter entitled to the same protection against injurious interfer-

ence to the extent of this right. as the other company would have been.

A municipal ordinance gave a street railway company the exclusive right to lay its track in such streets as should be designated by the council, if accepted by the company within a certain time. *Held,* that the company after forfeiting such right as to specified streets could not maintain a bill to enjoin another company, upon which the right had been subsequently conferred, from laying its track in streets not so designated to complainant, unless it could show actual injury thereby to its own interests.

Where a street railway company has refused to build an additional road lawfully required by the common council, it is discretionary with the council to make such changes in the proposed route as to adapt it to form a junction with the road of some company that will build it, even though, in so doing, a street in which the former company had had exclusive rights, is used as a connecting link. If such a use infringes the rights of the former company it is *damnum absque injuria.*

A common council cannot properly so multiply street railway tracks in a particular street as to interfere with the rights of the general public in the street.

Appeal from Kent. Submitted Apr. 21. Decided June 14.

INJUNCTION bill. Dismissal affirmed.

*Champlin & More* for complainant appellant. The Legislature has entire control over the streets of a city and can delegate its authority t> local organizations: *Board of Health v. Heister* 37 N. Y. 672; *Clarke v. Rochester* 28 N. Y. 638; *Matter of Gilbert Elevated Railway* 70 N. Y. 374; a monopoly is an allowance for the sale, buying, selling, etc., of anything whereby a trade or labor is restrained, people are hindered from getting a livelihood, and particular persons are enabled to fix prices: 5 Bac. Ab. tit. Monopoly (A); *Citizens' Coach Co. v. Camden Horse R. R.* 33 N. J. Eq. 278; see *Norwich Gas Light Co. v. Norwich City Gas Co.* 25 Conn. 19; *State v. Cincinnati Gas Light & Coke Co.* 18 Ohio St. 262; *Chicago v. Rumpff* 45 Ill. 91; *Gale v. Kalamazoo* 23 Mich. 344; *Logan v. Pyne* 43 Ia. 524; *Gunmakers v. Fell* Willes 384; *Harrison v. Godman* 1 Burr. 12; *Elwood v. Bullock* 6 Q. B. 383; *Nash v. McCracken*

33 U. C. (Q. B.) 181; *Queen v. Johnson* 38 id. 549; *Slaughter House Cases* 16 Wall. 109.

*E. S. Eggleston* for defendant.   A municipal council cannot surrender its power over the public streets: *Davis v. Mayor* 14 N. Y. 532; *Milhau v. Sharp* 27 N. Y. 611; *Minturn v. Larue* 23 How. 435; 1 Dill. Mun. Corp. § 89; 2 id. § 695.

CAMPBELL, J.   Complainant sued defendants to restrain them from building a street railway on a line which is claimed in the bill to be within the exclusive right of complainant.

It appears that in 1864 a company was incorporated under the statute for the incorporation of Train (which is a clerical mistake for Tram) Railways.   This was done under the amendatory act of 1861, which for the first time allowed such companies to be created for the purpose of building street railways.   Laws 1861, pp. 11, 12.   This statute required the consent of the towns or cities to be given, and confined the companies to using the streets on "such terms and conditions as the said authorities may from time to time prescribe."

The articles designated the proposed route of the railway to be from the Detroit and Milwaukee depot to Jefferson avenue through such streets as the common council should designate, to be continued through such other streets and roads as should be thereafter designated, and also to the Godfrey plaster bed.

In 1863 power was given to such companies to make mortgages which should be effective to cover the superstructure built or to be built and the corporate rights on any right of way which the company should have obtained. The same statute provided for filing with the Secretary of State additional certificates for the extension of roads beyond the original routes.   Laws 1863, pp. 33, 34.

On October 11, 1864, the council of Grand Rapids granted to the company just organized exclusive permission to lay a single track on certain streets named in the ordinance

between the termini named, "and through such other streets and avenues in said city as may from time to time be fixed and determined by the common council of the city of Grand Rapids, and assented to in writing by said corporation," subject to a proviso that in case of a failure by the company to accept any new route in writing in 30 days the council might give the privilege to any other company, with power to cross tracks. The company was at liberty to build a double track at any time within 5 years, with the consent of the council. Other provisions were made, which are not now important; among which were rules to prevent interference with ordinary highway purposes.

Immediately after this, a mortgage was made and bonds issued to raise money to build and equip the road, which was put in operation in due time. This mortgage was foreclosed in chancery, and the property seems to have been bid off in the name of George S. Frost, in December, 1869. The sale was confirmed on the 29th of January, 1876.

On the 30th of December, 1869, Mr. Frost and certain other associates organized the company which is complainant in this suit for the purpose of succeeding the old company in the rights and franchises purchased on the foreclosure. On the 30th of December, 1869, the common council of Grand Rapids passed an ordinance which, after reciting the former ordinance of 1864 and the transfer of interests, granted to complainant similar exclusive rights to those granted to the old company.

This present incorporation was had under a statute of 1867 entitled "An act to provide for the formation of street railway companies." Laws 1867, p. 46, which, as amended, is chapter 77 of the Compiled Laws of 1871. Section 15 of this statute authorized companies organized under it to acquire at judicial sale or otherwise the property and rights of previously-existing street railway companies, and hold them on the same terms. The act also by its language brought all existing companies within its conditions, and compelled all future companies to conform to it.

It was made a question on the argument whether com-

plainant ever accepted in writing the ordinance of December, 1869, as contemplated by section 13 of the act of 1867. That section does not require the written consent of the company except as a condition precedent to building railways. It is questionable whether it would apply to the purchase, under section 15, of an existing road so long as no new road was to be built, and as no change could be made of that kind without new permission and a written acceptance of the new route, we do not feel sure that any such acceptance became important. But as there is testimony strongly tendnig to show a written acceptance, and the council has always recognized complainant as having full rights, we do not think it important to further discuss that point.

We may assume, then, that complainant possesses whatever rights could be claimed under either of the ordinances of 1864 or 1869. But as defendants claim these rights have been more or less modified by subsequent failures to accept new and changed lines of road, these changes require attention. By section 14 of the statute of 1867 the authorities of any city are forbidden to deprive any company of privileges conferred by ordinance and accepted. And this immunity is as applicable to new companies acting where old ones have declined to act, as to the original companies.

On the 27th of May, 1878, permission was given to the West Side Street Railway Company of Grand Rapids to build a road along Scribner street, and such other streets, etc., as should be thereafter designated by the council. This was done in pursuance of a failure of complainant to build on the requirement of the council, made February 1, 1875. The route required, which was on such failure allotted to the defendant and to another company, covers several streets or parts of streets which need not be now enumerated. In August, 1873, complainant had expressly waived the right to build from Monroe street, at its intersection with Division, to the fair grounds on the southern limits of the city, and this route was also given to a different company.

The case also shows that no double track was built, and that complainant objected on demand to build one for reasons which we need not dwell on. It also shows orders to build on Ionia street, and on certain parts of Pearl and Division streets, which have not been complied with so far as appears.

On the 3d of March, 1879, the council required complainant to build a railway along certain streets named from the intersection of West Bridge and Scribner streets to the Detroit & Milwaukee Railroad crossing on Oakes street. This complainant failed to do, and on the 23d of June the route was allotted to defendant. In September, 1880, the ordinance allowing defendant to build the route was amended in certain particulars whereby complainant claims certain portions of streets were covered which complainants had not been asked to build on, and a part of Monroe street was occupied, although complainant has always had a track on that street.

The bill was filed in May, 1881, to restrain defendants from building on the lines not included in the demand on complainant, and on Monroe street, and on a final hearing was dismissed.

The case is brought before us in a very unsatisfactory way, without maps or other *data* to enable us to understand the full bearing of some of the questions of fact. But enough appears to satisfy us that the case in no way depends on any of the constitutional questions upon which counsel have spent much of their arguments, and we do not propose to discuss them. It is evident that the city of Grand Rapids has not disputed the priority of complainant as claimed under the ordinances of 1864 and 1869, but has acted on the idea that such priority has to the extent of the line involved in this controversy been forfeited.

The case presents two and only two real questions,—*first,* assuming such priority as once existing, has it been lost over this line? and *second,* if any part of this line is not thus forfeited, does the bill make out any such case as, aided by

the proofs, will justify the restraining interference of a court of equity?

After the defendant and other companies, if there are such, became entitled to build their railways over streets relinquished by complainant, they became entitled to the same rights against injurious interference, and to the same favorable consideration, within those bounds, as complainant in its own larger sphere. We do not think that it was illegal, when complainant should refuse to build a line from its own bounds to reach a certain part of the city where the accommodation was needed, to make such changes in the proposed general route as would make it better adapted to form a junction with the other roads whose owners are willing to build it. Any variations which had no other substantial purpose, would be entirely proper. Unless so far colorable or oppressive as to indicate substantial wrong, we cannot assume the council departed from their proper discretion. It was the duty of complainant to show such a variation as would work a real and not merely a theoretical grievance.

The bill is not so drawn as to indicate any actual grievance except on Monroe street, and inasmuch as complainant could never have obtained any local rights in the portions of other streets named, without further authority from the council, the inclusion of these in defendant's line could do no harm unless actually or probably creating some rivalry or diminution of business. There is no allegation and there is no proof tending to show that it makes any tangible difference to complainant whether defendant should or should not have been allowed to use these parts of the line, in order to make a connection between the proposed terminal stations.

The only testimony bearing on damages, which is of any importance, is that of Mr. Thayer, who is evidently better informed than the other witnesses, and may be supposed to know the full extent of the mischief. He testifies in answer to a sweeping question that the construction of defendant's line as laid out in the ordinance would damage the complainant permanently more than $100. But he was

not asked whether its construction on the line proposed would be any worse than if confined to the line rejected by complainant.

He also, after testifying that complainant's line is in the center of Monroe street, stated that it would be injurious to complainant to have defendant's line substantially in the center of the same street. This is obvious enough, but defendants do not, so far as the record shows, propose to put their line in that position.

The only other element of damage shown is that laying defendant's line on either side would interfere with the laying by complainant of a double track.

But complainant lost this right after the expiration of five years from the building of the first track, and could not at any rate build it without the consent of the council. That body certainly cannot properly so multiply tracks as to interfere with the rights of the general public in the street. But as complainant has no right to insist on having a double track, this grievance is not a legal grievance.

It was insisted, however, that complainant's right in Monroe street is exclusive. However this may be as to the profits of that as a distinct line, we do not think the use of a part of the street as a mere connecting link in a road not deriving its business from transporting passengers on that street, is necessarily a violation of such a right if it exists. It is plain from the testimony that no damage is anticipated on any ground of local rivalry in Monroe street, and it can form no basis for equitable interference. Even if it could be regarded as a possible infringement, it is *damnum absque injuria,* so far as we can now judge.

Upon a review of the whole case we do not think that upon complainant's own theory of rights under the various ordinances in question, there has been any such invasion of right, or any such damage, as would justify a court in granting relief.

The bill was properly dismissed, and the decree must be affirmed with costs.

COOLEY and MARSTON, JJ. concurred.