NOVEMBER TERM, 1909.    203

Grand Trunk, etc., R. Co. *v.* City of South Bend—174 Ind. 203.

# Grand Trunk Western Railway Company *v.* City of South Bend et al.

[No. 20,981.  Filed November 23, 1909.  Rehearing denied May 11, 1910.]

1. Constitutional Law.—*Police Power.— Alienating.— Streets.— Control over.*—The legislature has, as a part of the police power, an inalienable right of control over the streets and other highways of the State.  p. 209.
2. Constitutional Law.—*Legislative Control over Streets.—Delegation of.*—The legislature may delegate its powers over streets to cities and towns.  p. 209.
3. Constitutional Law.—*Legislative Control over Streets.—Delegation of.—Effect.*—A delegation of the exclusive right of control over streets to cities and towns does not empower such cities and towns to surrender or alienate such right.  pp. 210, 216.
4. Constitutional Law.—*Streets.—Use of, by Railroads.—Legislative Control.*—Cities have the right to authorize railroad companies to use their streets, but such right is delegated to them by the State.  p. 210.
5. Constitutional Law.— *Railroads.— Use of Streets.— Future Regulation.*—The use of a street by a railroad company under municipal ordinance is subject to the continuing right of regulation and restriction by the municipality granting the right.  pp. 210, 229.
6. Municipal Corporations.—*Ordinances.—Contracts.—Streets.— Use of.—Railroads.—Police Power.*—An accepted city ordinance granting to a railroad company the right to use the streets, constitutes a contract, but does not deprive the city of its right to exercise its police power in regulating and restricting the use of such streets.  pp. 211, 214.
7. Municipal Corporations.— *Ordinances.— Granting Use of Streets.—Implied Conditions.*—In a city ordinance granting to a railroad company the right to use the streets, there is an implied condition that the use by the railroad company shall not destroy the proper and legitimate use thereof by the public.  p. 212.
8. Municipal Corporations.— *Streets.— Use of, by Railroads.— Powers of Council.—Notice of.*—All persons dealing with a city council must take notice of the powers of such council.  p. 213.
9. Municipal Corporations.— *Powers.— Proprietary.—Legislative.* —A city's proprietary powers are distinct from its legislative powers; in the conduct of the former its ordinances are binding upon the city, but in the latter, they may be superseded or abolished by subsequent ordinances.  pp. 213, 217, 218.

Grand Trunk, etc., R. Co. *v.* City of South Bend—174 Ind. 203.

10. CONSTITUTIONAL LAW.— *Corporations.— Franchises.— Regulation of.—Police Power.*—Corporations receiving franchises from the State or from its municipalities, take them subject to the exercise of the police power by the State. pp. 214, 223.

11. CONSTITUTIONAL LAW.— *Cities.— Ordinances.— Revocation.— Franchises.—Railroads.—Double Tracks.*—A city ordinance granting to a railroad company the right to lay a double track in the streets may be revoked. pp. 215, 221, 228.

12. CONSTITUTIONAL LAW.— *Streets.— Legislative Control over.*— The legislature has complete control over streets, and, with or without the consent of cities, it may grant railroad companies the right to lay tracks therein. p. 218.

13. INJUNCTION.— *Cities.— Violating Ordinance.— Streets.— Railroads.—Complaint.—Conclusions.*—Allegations in a complaint to enjoin defendant city from interfering with the plaintiff railroad company's right to lay a double track in a certain street, as authorized by an ordinance, that "the obstruction of the general public in its use of the street by passing trains will be much less when two tracks are used than it is now, when all trains have to pass over a single track, and that there is ample space thereon for general travel, and for said double track," are mere conclusions and must be disregarded. p. 220.

14. INJUNCTION.— *Use of Streets.— Complaint.— Allegations.—Inferences.*—An allegation in a complaint to enjoin defendant city from interfering with the plaintiff railroad company in laying a double track in a certain street, as authorized by a city ordinance, that such street "is eighty-two and one-half feet wide," imports that such street including the sidewalk is of such width. p. 220.

15. EVIDENCE.— *Judicial Notice.— Width of Streets.— Space Required for Railroad Tracks.—Space Required for Double Tracks.*—Courts do not judicially know the width of sidewalks, or the roadways of streets, nor do they know the space required for the operation of one railroad track in a street; but they do know that the operation of a double track requires more than twice the space necessary for the operation of a single track. p. 220.

16. INJUNCTION.—*Laying Double Railroad Track in Street.—Obstruction.—Complaint.—Judicial Notice.*—An allegation in a complaint to enjoin a city from interfering with the plaintiff railroad company in laying a double track in a certain street, alleging that the obstruction will be less with two tracks than with one, will be disregarded, the courts taking judicial notice that the obstruction would be greater. pp. 220, 224.

17. MUNICIPAL CORPORATIONS.—*Use of Streets by Railroads.—Obstruction.—Legislative Questions.*—Whether laying a double railroad track in a street will unnecessarily obstruct the public use thereof is a legislative question, and the courts will interfere only

where arbitrary, unreasonable, capricious or whimsical power is used. pp. 221, 223.

18. CONSTITUTIONAL LAW.—*Impairing Obligation of Contracts.—Police Power.*—The provision of the federal Constitution (Art. 1, §10), and of the state Constitution (Art. 1, §24), prohibiting the enactment of laws impairing the obligation of contracts, is not violated by the enactment of laws under the police power, though they incidentally affect contracts. p. 222.

19. APPEAL.—*Rehearing.—Questions Presentable.*—Questions not presented at the original hearing on appeal, cannot be presented on a petition for a rehearing. p. 225.

20. CONSTITUTIONAL LAW.—*Police Power.—Necessity of Exercise of.—Judicial Interference.*—The question of the public necessity for the exercise of the police power is a legislative one, and the questions of the reasonableness of the exercise thereof and of the subjects of such exercise are judicial. p. 226.

21. MUNICIPAL CORPORATIONS.— *Ordinances.— Revocation.— Granting Right to Railroad Company to Lay Double Track in Street.— Presumptions.*—The revocation of a city ordinance granting to a railroad company the right to lay double tracks in a certain street, is presumed to be founded upon a sufficient reason for so doing, and the burden is upon the person objecting to such revocation to plead and prove the facts showing the contrary. p. 228.

22. MUNICIPAL CORPORATIONS.— *Ordinances.— Revocation.— Railroads.—Use of Streets.—Reasonableness.*—The courts cannot say that an ordinance restricting a railroad to the use of a single track in a certain street of a city, is unreasonable. p. 229.

From Laporte Circuit Court; *John C. Richter,* Judge.

Suit by the Grand Trunk Western Railway Company against the City of South Bend and others. From a judgment for defendants, plaintiff appeals. (For decision on appeal to United States Supreme Court, see——— U. S. ———.) *Affirmed.*

*Anderson, Parker & Crabill* and *Kretzinger, Gallagher, Rooney & Rogers,* for appellant.

*Frank H. Dunnahoo, Lucius L. Hubbard, Arthur L. Hubbard, Iden S. Romig* and *Harry R. Wair,* for appellees.

MYERS, J.—This suit was brought by appellant against the city of South Bend and certain of its officers, to enjoin them from interfering with appellant in its attempt to lay a second

206　SUPREME COURT OF INDIANA,

Grand Trunk, etc., R. Co. *v.* City of South Bend—174 Ind. 203.

track through a portion of the city of South Bend, on and along the center of Division street. Suit was originally commenced in the St. Joseph Circuit Court, from which a change of venue was taken to the Laporte Circuit Court. There is an amended complaint in two paragraphs. Appellees' separate and several demurrers for want of sufficient facts were sustained to each of the amended paragraphs of the complaint. Appellant refused to plead over, and judgment was rendered against appellant for costs.

The errors assigned are the sustaining of each and all of the demurrers to the amended complaint.

After the preliminary allegations of the complaint, it appears from the first paragraph thereof that on or about October 24, 1866, the city of South Bend, by William G. George, mayor, and fourteen individuals, executed articles of association, to incorporate, for the purpose of building, owning and operating, a railroad to be known as the "Peninsular Railroad Company of Indiana," running from the north line of the State of Indiana through South Bend, and thence in the direction of Chicago, and to be about eighty-five miles long; that the articles of association were filed on December 10, 1866; that on March 2, 1868, the common council of the city of South Bend enacted an ordinance, No. 62, whereby authority was given, granted and duly vested in the Peninsular Railroad Company of Indiana to construct and maintain a track for its said railroad within the city of South Bend upon the following terms, to wit: "Commencing at the eastern limits of said city, at the east end of a twenty-foot street laid out and dedicated on the south side of Samuel Gottrell's addition to the town of Lowell, or at a point on said twenty-foot street that the company might see proper to adopt, thence across the St. Joseph river to the eastern end of the extension of Division street, and its extension in said city so far as said company might desire, crossing all intermediate streets and alleys, and to run locomotive cars and trains over said road so far as might be necessary for

NOVEMBER TERM, 1909. 207

Grand Trunk, etc., R. Co. *v.* City of South Bend—174 Ind. 203.

conducting the business of said company;'' that no more than one track for such road should be laid across any street of said city without the previous assent of the common council of said city, except only the privilege ''which was thereby granted to lay a double track across the bridge over the St. Joseph river, and from the western terminus of said bridge to General Taylor street in said city, subject to the conditions thereinbefore contained;'' that in the year 1881 the Chicago and Grand Trunk Railway Company, which company .was then operating and maintaining said railroad, desired to acquire and perfect its title to the land used by it, and which it would be necessary to use in operating its road as a right of way through Division street in said city, and to settle with and compensate the owners of said land for their interest in the central portion of the street so taken, and, in accordance with the statutes of the State of Indiana, to appropriate for its use, as and for a railroad track, a strip of land eighteen feet wide on the street in question. The complaint avers that plaintiff is the owner in fee of said right of way eighteen feet wide, extending from the west end of the bridge crossing the St. Joseph river to General Taylor street, in the city of South Bend, a distance of about two hundred rods; that since the year 1871, this company and its predecessors aforesaid, have openly, continuously and notoriously occupied the center of Division street with its said railroad from the west end of said bridge to General Taylor street, and have always claimed the right to lay said double track across the St. Joseph river, and along said Division street from the west end of said bridge to the center of General Taylor street, aforesaid, whenever the requirements of their business should make it necessary, and have expended large sums of money in maintaining said track, and have complied with the conditions required of them by said ordinance, with the full knowledge and acquiescence of the city of South Bend and the authorities thereof; that on January 1, 1881, said Chicago and Grand Trunk Railway

Company did lay a double track on Division street between the St. Joseph river and Michigan street, which lies five squares east of and parallel with General Taylor street, and it and its assigns have ever since used, and plaintiff still uses, said double track; that on October 14, 1901, the city of South Bend, through its common council, assumed by ordinance to repeal so much of the ordinance granting the right to maintain a railroad in Division street as gives the right to a second track in that street from Michigan street to General Taylor street, and the city now claims that such action of the common council was effective, and that thereby plaintiff's right to said second track was lawfully revoked, and defendants have forcibly prevented the putting down of such second track. It is also alleged that the street is eighty-two and one-half feet wide, and that the obstruction of the street by passing trains will be much less when two tracks are used than it is now, when all trains have to pass over a single track, and that there is ample space thereon for general travel and for said double track.

The second paragraph of complaint is the same as the first, so far as any question involved in this appeal is concerned. The only material difference is as to the manner of acquisition by appellant, of the rights, franchises and property of the original company, and no question is raised by appellees as to that matter. There is the additional allegation in the second paragraph that appellant, supposing its title in all respects perfect, kept up and maintained its line through Division street, and expended on the whole line of railroad $1,000,000.

The questions which need to be here decided are: (1) Did appellant as successor to the rights and privileges of the original Peninsular Railroad Company of Indiana acquire, by virtue of the grant contained in ordinance No. 62 of the common council of the city of South Bend, the right to lay an additional track on Division street between Michigan and General Taylor streets? and (2) if it obtained that right under

the grant by that ordinance, could the city by another ordinance revoke so much of the grant as permitted the laying of an additional track on that portion of Division street? If the ordinance contained such a grant, and the city had no power to revoke it, this judgment must be reversed. If the company has not such right to lay an additional track, or if there was granted a right to lay an additional track and the city had the power to revoke this grant, the judgment must be affirmed.

1. The legislature, primarily, has control over streets, as well as other public highways. They are the arteries of the State. *State, ex rel.,* v. *Board, etc.* (1908), 170 Ind. 595; *Cones* v. *Board, etc.* (1894), 137 Ind. 404. And this governmental power of control cannot be surrendered or contracted away. It is a part of the police power which cannot be alienated or placed beyond municipal control. *Northern Pac. R. Co.* v. *State, ex rel.* (1908), 208 U. S. 583, 28 Sup. Ct. 341, 52 L. Ed. 630, and cases cited; *State* v. *Barrett* (1909), 172 Ind. 169; *Indiana Oil Co.* v. *Calvert* (1907), 168 Ind. 321, 10 L. R. A. (N. S.) 780; *Vandalia R. Co.* v. *State, ex rel.* (1906), 166 Ind. 219, 117 Am. St. 370; *Cleveland, etc., R. Co.* v. *Harrington* (1892), 131 Ind. 426; *Stone* v. *Mississippi* (1879), 101 U. S. 814, 25 L. Ed. 1079; *Boston Beer Co.* v. *Massachusetts* (1877), 97 U. S. 25, 24 L. Ed. 989; *Northwestern Fertilizing Co.* v. *Hyde Park* (1878), 97 U. S. 659, 24 L. Ed. 1036; *Board, etc.,* v. *Phillips* (1903), 67 Kan. 549, 73 Pa. 97, 100 Am. St. 475; 3 Elliott, Railroads (2d ed.) §1082; Elliott, Roads and Sts. (2d. ed.) §§741, 742, 758.

2. But the legislature may delegate to a city or town the power of control over its streets. *State, ex rel.,* v. *Board, etc., supra; Town of New Castle* v. *Lake Erie etc., R. Co.* (1900), 155 Ind. 18; *Burkam* v. *Ohio, etc., R. Co.* (1890), 122 Ind. 344.

The act in force when the ordinance in question was en-

acted reads as follows: "The common council shall have exclusive power over the streets, highways, alleys, and bridges within such city," etc. §3161 R. S. 1881. This section was first amended in 1891 (Acts 1891 p. 122, §3623 Burns 1894), and many details added. This power of exclusive control is a delegated power or trust, and if the legislature cannot surrender, alienate or contract away its legislative functions, its governmental and police powers, it, of course, cannot delegate to a city or town the right of surrender or alienation.

It is not an open question in this State that to cities is delegated the power of permitting the laying of railroads in their streets; but such power is the grant of the State. *Town of New Castle* v. *Lake Erie, etc., R. Co. supra; Burkam* v. *Ohio, etc., R. Co., supra; Kistner* v. *City of Indianapolis* (1885), 100 Ind. 210; *Tate* v. *Ohio, etc., R. Co.* (1856), 7 Ind. 479; *Haslett* v. *New Albany, etc., R. Co.* (1893), 7 Ind. App. 603; *City R. Co.* v. *Citizens St. R. Co.* (1897), 166 U. S. 557, 17 Sup. Ct. 653, 41 L. Ed. 1114.

The question of the character and the measure of the grant is a different one. "In so far, however, as such control consists in regulation merely, and is demanded by considerations of public health or safety, it is now well understood, that a grant does not involve such surrender, since it is impliedly subject to such reasonable safety regulations as may be imposed from time to time. The grant may surrender to some extent the previous liberty of common use of the public property, but it does so only for the purpose of substituting other, and presumably more valuable public facilities." Freund, Police Power §575. It is justifiable, if at all, upon the theory that a railroad is in some sense a public highway—a means of rapid travel. *Toledo, etc., R. Co.* v. *Pence* (1873), 68 Ill. 524; *Clark* v. *Chicago, etc., R. Co.* (1895), 127 Mo. 197, 29 S. W. 1013; *Sharpless* v. *Mayor, etc.* (1853), 21 Pa. St. 147, 59 Am. Dec. 759; *Davidson* v. *County Commissioners, etc.* (1872), 18 Minn.

482; *Beekman* v. *Saratoga, etc., R. Co.* (1831), 3 Paige (N. Y.) *45, 22 Am. Dec. 679; *Texas, etc., R. Co.* v. *Sutor* (1882), 56 Tex. 496; Freund, Police Power §575.

It is settled in many jurisdictions, and is accepted in this State, that an ordinance imposing terms and conditions for the use of streets, when accepted, becomes a binding

6. contract, but not to the extent that the police powers are surrendered. The distinction in the cases will be found to lie in the subject-matter; that is, such contracts are inviolable as applied to the business concerns of cities, but are subject to regulation when the public interest intervenes. As marking this distinction on the one hand are the cases of *City of Indianapolis* v. *Consumers Gas Trust Co.* (1895), 140 Ind. 107, 27 L. R. A. 514, 49 Am. St. 183, *Meyer* v. *Town of Boonville* (1904), 162 Ind. 165, and *City of Indianapolis* v. *Indianapolis, etc., Coke Co.* (1879), 66 Ind. 396; and on the other hand are the cases of *Western Paving, etc., Co.* v. *Citizens St. R. Co.* (1891), 128 Ind. 525, 10 L. R. A. 770, 25 Am. St. 462, *Muncie Nat. Gas Co.* v. *City of Muncie* (1903), 160 Ind. 97, 60 L. R. A. 822, *City of Rushville* v. *Rushville Nat. Gas Co.* (1905), 164 Ind. 162, and *City of Noblesville* v. *Noblesville Gas, etc., Co.* (1901), 157 Ind. 162. The question is as to the nature of the contract, the character of the legislation, the implied conditions, and the public policy which necessarily enters into it.

In 2 Dillon, Mun. Corp. (4th ed.) §716, in commenting on the case of *Davis* v. *Mayor, etc.* (1856), 14 N. Y. 506, it is said: "The judgment of the court * * * rests upon the sound principle that the powers of a corporation in respect to the control of its streets are held in trust for the public benefit, and cannot * * * be surrendered or delegated by contract to private parties, * * * and hence the resolution of the council authorizing private persons to control and operate a railroad upon certain terms, without power of revocation and without limit as to time, was not a license or act of legislation, but a contract; void, however,

because if valid it would deprive the corporation of the control and regulation of its streets." The right to use a highway or street is taken, subject to the implied condition that the highway or street shall not be used in such manner as to destroy its proper and legitimate use by the public at all times. · *Vandalia R. Co.* v. *State, ex rel., supra; Des Moines St. R. Co.* v. *Des Moines, etc., St. R. Co.* (1887), 73 Iowa 513, 33 N. W. 610, 35 N. W. 602; *Mayor, etc.,* v. *Baltimore Trust, etc., Co.* (1897), 166 U. S. 673, 17 Sup. Ct. 696, 41 L. Ed. 1160; *Richmond, etc., R. Co.* v. *Richmond* (1877), 96 U. S. 521, 24 L. Ed. 734; *People* v. *Rich* (1879), 54 Cal. 74; *Commonwealth* v. *City of Frankfort* (1891), 92 Ky. 149, 17 S. W. 287; *Detroit City Railway* v. *Mills* (1891), 85 Mich. 634, 48 N. W. 1007; *Schulenburg & Boeckeler Lumber Co.* v. *St. Louis, etc., R. Co.* (1895), 129 Mo. 455, 31 S. W. 796; *Lockwood* v. *Wabash R. Co.* (1894), 122 Mo. 86, 26 S. W. 698, 24 L. R. A. 516, 43 Am. St. 547; *Watson* v. *Robberson Ave. R. Co.* (1897), 69 Mo. App. 548; *Newport News, etc., Electric Co.* v. *Hampton Roads, etc., Electric Co.* (1904), 102 Va. 795, 47 S. E. 839; *Washington, etc., R. Co.* v. *City Council, etc.* (1900), 98 Va. 344, 36 S. E. 385; *Richmond, etc., R. Co.* v. *City of Richmond* (1875), 67 Va. 83; *Mahady* v. *Bushwick R. Co.* (1883), 91 N. Y. 148. 43 Am. Rep. 661; *Dooly Block* v. *Salt Lake, etc., Transit Co.* (1893), 9 Utah 31, 33 Pac. 229, 24 L. R. A. 610; *Wilder* v. *Aurora, etc., Traction Co.* (1905), 216 Ill. 493, 75 N. E. 194; *Ligare* v. *City of Chicago* (1891), 139 Ill. 46, 28 N. E. 934, 32 Am. St. 179; *Williams* v. *City Electric St. R. Co.* (1890), 41 Fed. 556; *Chicago, etc., R. Co.* v. *People, ex rel.* (1906), 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596; *Union Bridge Co.* v. *United States* (1907), 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523; *New Orleans Gas Light Co.* v. *Drainage Commission, etc.* (1905), 197 U. S. 453, 25 Sup. Ct. 471, 49 L. Ed. 831; *Funk* v. *St. Paul City R. Co.* (1895), 61 Minn. 435, 63 N. W. 1099, 29 L. R. A. 208, 52 Am. St. 608; *Rische* v. *Texas Trans. Co.* (1901), 27 Tex. Civ. App. 33,

66 S. W. 324; *Schaaf* v. *Cleveland, etc., R. Co.* (1902), 66 Ohio St. 215, 64 N. E. 145; *Lake Roland, etc., R. Co.* v. *Mayor, etc.* (1893), 77 Md. 352, 26 Atl. 510, 20 L. R. A. 126; *Linden Land Co.* v. *Milwaukee Electric R., etc., Co.* (1900), 107 Wis. 493, 511, 83 N. W. 851; *City of St. Paul* v. *Chicago, etc., R. Co.* (1895), 63 Minn. 330, 63 N. W. 267, 65 N. W. 649, 68 N. W. 458, 34 L. R. A. 184; 2 Elliott, Roads and Sts. (3d ed.) §§840, 956, 958.

"All parties dealing with a sovereign power, or one of its functionaries in the exercise of governmental power, the subject of which pertains to government, do so knowing that it can not contract away the power conferred for self-protection or self-preservation. The rule, therefore, that the legislature can pass no law impairing the obligation of contracts does not apply to parties dealing with a department of government concerning the future exercise of powers conferred for public purposes by legislative acts, where the subject-matter of the contract is one which affects the safety and welfare of the public." *Board, etc.,* v. *Phillips* (1903), 67 Kan. 549, 73 Pac. 97, 100 Am. St. 475. See, also, *Northern Pac. R. Co.* v. *State, ex rel., supra; Jackson County Horse R. Co.* v. *Interstate, etc., R. Co.* (1885), 24 Fed. 306; *Cincinnati, etc., R. Co.* v. *City of Connersville* (1908), 170 Ind. 316; *Mayor, etc.,* v. *Second Ave. R. Co.* (1865), 32 N. Y. 261; *New York, etc., R. Co.* v. *Bristol* (1894), 151 U. S. 556, 14 Sup. Ct. 437, 38 L. Ed. 269.

That such contracts are not strictly private contracts is pointed out in the case of *People, ex rel.,* v. *Suburban R. Co.* (1899), 178 Ill. 594, 53 N. E. 349, 49 L. R. A. 650.

9. "The rights of municipal corporations to property in lands and its usual incidents, and to create and establish ferries and railroad franchises, are quite distinct and separate from the duty as legislatures, having authority to pass ordinances for the control and government of persons and interests within the city limits. The latter are powers held in trust, as all legislative powers are, to be used and

exercised for the benefit and welfare of the whole community, while the former are property, in the ordinary sense, to be acquired and conveyed in the same manner as natural persons acquire and transfer property." *Mayor, etc.,* v. *Second Ave. R. Co., supra.*

Corporations which receive franchises from the state, or from municipalities duly authorized to grant them, take the granted privilege subject to the power of the state to require them to at all times do whatever may be necessary for the health, safety, and welfare of the community. No grant can devest the sovereignty of the authority to enact measures for this purpose. *City of Chicago* v. *Chicago, etc., Traction Co.* (1902), 199 Ill. 259, 65 N. E. 243, 59 L. R. A. 666; 3 Elliott, Railroads (2d ed.) §1096ae; *Town of Westbrook's Appeal* (1889), 57 Conn. 95, 17 Atl. 368.

In the case of *Washington, etc., R. Co.* v. *City Council, etc.* (1900), 98 Va. 344, 36 S. E. 385, it was held that the power of a city to control and regulate its streets is an inherent and continuing power, to be exercised whenever the city council may think proper, subject only to the limitation that it must act in good faith, and that the regulation must be reasonable, and not imposed arbitrarily or capriciously, the presumption being in favor of the propriety and validity of what the city has directed to be done. This case was approved in *Newport News, etc., Electric Co.* v. *Hampton Roads, etc., Electric Co., supra,* following the case of *Richmond, etc., R. Co.* v. *City of Richmond* (1875), 67 Va. 83, which latter case was affirmed on appeal to the United States Supreme Court (*Richmond, etc., R. Co.* v. *Richmond* [1877], 96 U. S. 521, 24 L. Ed. 734). The city of Richmond enacted an ordinance prohibiting the use by a railway company of steam engines on Broad street in that city, though the company had so used the street for more than forty years. The claim was made that it had the right to continue such use under its contract with the city,

and that the prohibiting ordinance impaired vested rights and deprived the company of its property without due process of law, both of which contentions are denied. In the case of *Mayor, etc., v. Baltimore Trust, etc., Co., supra,* it was held that the right of a street railway company, under an ordinance, to lay tracks in the streets, is subject to reasonable regulation by subsequent ordinances as to the use of the streets, and that although a street railway company had been granted a franchise to lay a double track in a street, a subsequent ordinance, restricting the right to the use of a single track, was not an unreasonable restriction of the company's rights, or a material modification of the prior ordinance, and that a failure to provide any compensation to the company for taking up one track where it had laid a double track, after notice by the city authorities to permit but one track on the street, did not make the ordinance unreasonable.

In the case of *Snouffer* v. *Cedar Rapids, etc., City R. Co.* (1902), 118 Iowa 287, 92 N. W. 79, the ordinance authorizing the laying of a track in a street had been in force six years, and had been availed of as to other streets, but no track had been laid on the particular street, when the ordinance was repealed, and it was held that while the right of control cannot be exercised arbitrarily or unreasonably, the council could not pass an irrevocable ordinance, for the reason that it is the trustee for the public, and cannot abridge its legislative powers. The case is an instructive one, and strongly in point here. In the case at bar, the ordinance had been in force over thirty-eight years, without any avail being made of it, or any money expended with a view to double-tracking, so far as any allegation of the complaint discloses.

The learned counsel for appellant direct our attention to the cases of *Africa* v. *Board, etc.* (1895), 70 Fed. 729, and *People's Passenger R. Co.* v. *Baldwin* (1880), 14 Phila. 231. We add the case of *Hestonville, etc., Co.* v. *City of*

*Philadelphia* (1879), 89 Pa. St. 210, in which it is held that an ordinance accepted is in no degree revocable, and that the grantee is not required to exercise all the powers conferred from the beginning. Precisely the reverse of the holding in the case of *Africa* v. *Board, etc., supra,* was held in the cases of *Logansport R. Co.* v. *City of Logansport* (1902), 114 Fed. 688, *Citizens St. R. Co.* v. *City R. Co.* (1894), 64 Fed. 647, and *Citizens St. R. Co.* v. *City R. Co.* (1893), 56 Fed. 746. The better reasoning and the overwhelming weight of authority are against the rule in the case of *Africa* v. *Board, etc., supra.*

The causes seem, however, to have been disposed of from the purely contractual viewpoint, as the police power seems not to have been invoked, referred to nor considered.

3. Our cases hold that cities cannot by contract surrender any of their legislative or discretionary powers confided to them for the public good, or held in trust for the public, and the great weight of authority is to the same effect. *City of New Albany* v. *New Albany St. R. Co.* (1909), 172 Ind. 487; *Indiana R. Co.* v. *Calvert* (1907), 168 Ind. 321, 10 L. R. A. (N. S.) 780; *Vandalia R. Co.* v. *State, ex rel.* (1906), 166 Ind. 219, 117 Am. St. 370; *Schipper* v. *City of Aurora* (1889), 121 Ind. 154, 6 L. R. A. 318; *City of Peru* v. *Gleason* (1883), 91 Ind. 566; *Northern Pac. R. Co.* v. *State, ex rel., supra; Union Bridge Co.* v. *United States, supra; Chicago, etc., R. Co.* v. *People, ex .rel., supra; New Orleans Gas Light Co.* v. *Drainage Commission, etc., supra; Mayor, etc.,* v. *Baltimore Trust, etc., Co., supra; New York, etc., R. Co.* v. *Bristol* (1894), 151 U. S. 556, 14 Sup. Ct. 437, 38 L. Ed. 269; *Lake Roland, etc., R. Co.* v. *Mayor, etc., supra; Town of Clarendon* v. *Rutland R. Co.* (1902), 75 Vt. 6, 52 Atl. 1057; *Thorpe* v. *Rutland, etc., R. Co.* (1854), 27 Vt. 140, 62 Am. Dec. 625; *Binninger* v. *City of New York* (1904), 177 N. Y. 199, 69 N. E. 390; *Columbus, etc., Coke Co.* v. *Columbus* (1893), 50 Ohio St. 65, 33 N. E. 292.

## NOVEMBER TERM, 1909. 217

Grand Trunk, etc., R. Co. v. City of South Bend—174 Ind. 203.

An instructive case is that of *Wabash R. Co.* v. *City of Defiance* (1897), 167 U. S. 88, 17 Sup. Ct. 748, 42 L. Ed. 87. In 1887 an ordinance was enacted authorizing the railway company to construct two overhead bridges in the city of Defiance, which it did at a cost of $2,300. In 1893 the city passed ordinances for lowering the grade of the streets to the grade of the railway, by the lowering of which grade a steep incline to the tracks on each side would be produced. The company attacked the validity of these ordinances, on the ground that dangerous crossings would be produced, and pointed out in the bill, with great particularity, the resulting dangers to its passengers and to the public. The language of the Ohio statute as to the control of streets by cities is very similar to our own, and upon a full review of the cases the court held that the power to change the grade of the streets, and require conformity to such grade, is a continuing one, and one that cannot be alienated, or, when the public is affected, be withdrawn from governmental regulation. Cities cannot disable themselves from performing their legislative or public functions. The case of *Vandalia R. Co.* v. *State, ex rel.* (1906), 166 Ind. 219, 117 Am. St. 370, is directly in point upon the proposition that the ordinance is not wholly contractual, but partly legislative, in character, and that it is not of such contractual character that it passes beyond control, or that the rights of the public and the duties of the railroad company can be devested, simply because previous contrary action has been taken. *Indianapolis, etc., R. Co.* v. *State, ex rel.* (1871), 37 Ind. 489. To the same effect is *Chicago. etc.. R. Co.* v. *Nebraska, ex rel.* (1897), 170 U. S. 57, 18 Sup. Ct. 513, 42 L. Ed. 948.

The apparent conflict between the cases touching the character and force of city ordinances with respect to their being licenses or easements, or, when acted upon, becoming contracts, and inviolable, has grown out of the failure in all cases to distinguish between the legisla-

218        SUPREME COURT OF INDIANA,

Grand Trunk, etc., R. Co. *v.* City of South Bend—174 Ind. 203.

tive or governmental powers, on the one hand, as applied to or affecting the police power, or in which the latter is involved, and the administrative powers with respect to the private or proprietary rights and interests, or business, on the other, or the dual capacity in which municipal corporations act. This distinction is not readily drawn. In each case it must inhere in the subject-matter.

Such contracts are necessarily legislative in the sense that the power primarily inheres in the legislature, for the legislature has the authority to grant railroads the right to lay tracks in streets without the consent or over the objection of municipalities, if it sees fit. *Cook* v. *Chicago, etc., R. Co.* (1898), '83 Iowa 278, 49 N. W. 92; *Ingram, Kennedy & Day* v. *Chicago, etc., R. Co.* (1874), 38 Iowa 669; *Chicago, etc., R. Co.* v. *Mayor, etc.* (1873), 36 Iowa 299; *City of Clinton* v. *Cedar Rapids, etc., R. Co.* (1868), 24 Iowa 455; *Borough of Millvale* v. *Evergreen R. Co.* (1890), 131 Pa. St. 1, 18 Atl. 993; 3 Elliott, Railroads (2d ed.) §1076.

So far then as the ordinance is legislative, it is so in conferring the power, and with respect to legislative matters, but the distinction must be kept in mind between the power thus conferred, and the purely administrative, proprietary or business powers. This distinction is referred to in the case of *City of Indianapolis* v. *Indianapolis, etc., Coke Co.* (1879), 66 Ind. 396, where this court said on page 403: "This power to legislate within the authority delegated to them [municipal corporations] by law, is distinct from the power to contract, although exercised by the same corporation. They cannot, by contract, delegate, or restrict their legislative power, nor can they, merely by their legislative power, make a contract. These two powers need not be confounded. The exercise of the legislative power requires the consent of no person except those who legislate; while it is impossible to make a contract without the consent of another, or others." As

applied to the case there under consideration, it is clearly manifest that it was a purely administrative contract, affecting the economic, business, or administrative concerns of the city, and in no sense involving its legislative or police concerns, as affecting the health, safety or convenience of its citizens. The distinction is again affirmed in the case of *Meyer* v. *Town of Booneville* (1904), 162 Ind. 165, where it is held that in granting a franchise to use the "streets, alleys and public places" to furnish heat, light, water, telephone, etc., it exercises a legislative power. But when the town or city enters into a contract with a second person, having such franchise, it exercises a business, and not a legislative, power. Citing numerous cases. The dual character of an ordinance which in one document should do both of these things is well exemplified in the proposition just quoted. The doctrine is affirmed in the cases of *City of Indianapolis* v. *Consumers Gas Trust Co.* (1894), 140 Ind. 107, 27 L. R. A. 514, 49 Am. St. 183, and *Indianapolis, etc., R. Co.* v. *State, ex rel.* (1871), 37 Ind. 489.

Appellant urges that the cases of *Lake Roland, etc., R. Co.* v. *Mayor, etc., supra,* and *Mayor, etc.,* v. *Baltimore Trust, etc., Co., supra,* are not in point, because as said, "the state court found and held that the power of the city council to amend or modify its ordinance was expressly retained in the statute of the state authorizing the passage of such ordinance." We do not understand the court so to hold or declare, except in so far as the power to legislate in the future is an inalienable and continuing power, to be exercised when the necessity may arise, and that this is a reserve power in the legislature and in the city council. Cases involving the effect upon the abutting property, and individual rights, of third persons are cited and relied upon, but they have no relevancy here, where the question is solely one of public interest, and of power in the city council as trustee for the public.

220     SUPREME COURT OF INDIANA,

Grand Trunk, etc., R. Co. *v.* City of South Bend—174 Ind. 203.

It is alleged that the street is eighty-two and one-half feet wide, "and that the obstruction of the street by passing trains will be much less when two tracks are used than it is now, when all trains have to pass over a single track, and that there is ample space thereon for general travel and for said double track." We think, however, that aside from the allegation that the street is eighty-two and one-half feet wide, the allegation is a conclusion. The allegation that the street is eighty-two and one-half feet wide imports that the street including the sidewalk is of such width. *Drew* v. *Town of Geneva* (1898), 150 Ind. 662, 42 L. R. A. 814, and cases cited; *People* v. *Meyer* (1899), 26 Misc. Rep. 117, 56 N. Y. Supp. 1097; *Martinovich* v. *Wooley* (1900), 128 Cal. 141, 60 Pac. 760; *Board, etc.,* v. *Hayden* (1899), 13 Colo. App. 36, 56 Pac. 201; *Challis* v. *Parker* (1873), 11 Kan. 384.

We cannot judicially know the width of the sidewalks or of the roadway proper. We cannot judicially know how much space is required for operating one track, but we do know that it requires more than double space for two tracks. The allegation therefore that the obstruction will be less with two tracks than one, is not only a solecism, but the allegation, if not a conclusion, is the allegation of a thing which necessarily could not be, and hence is without force and cannot be regarded. *Jamieson* v. *Indiana, etc., Oil Co.* (1891), 128 Ind. 555, 574, 12 L. R. A. 652; *Jones* v. *United States* (1890), 137 U. S. 202, 11 Sup. Ct. 80, 34 L. Ed. 691. There are cases in which the question of the degree of obstruction has been the basis of the court's action. Of this class is the case of *Nagel* v. *Lindell R. Co.* (1902), 167 Mo. 89, 66 S. W. 1090, where the question arose between abutting owners and the railway company. These cases are contrary to the general doctrine that there is no power in municipalities so to restrict or obstruct the use of streets as to render such streets ineffective for the purposes of

their creation. *Ligare* v. *City of Chicago* (1891), 139 Ill. 46, 28 N. E. 934, 32 Am. St. 179; *Detroit City Railway* v. *Mills* (1891), 85 Mich. 634, 48 N. W. 1007; *Lockwood* v. *Wabash R. Co.* (1894), 122 Mo. 86, 26 S. W. 698, 43 Am. St. 547, 24 L. R. A. 516.

We are left without any guide on the question of the degree of the obstruction; but, aside from that, the question is one for the city to determine, and we can only interfere where the action is arbitrary, unreasonable, capricious or whimsical, and we find nothing of this kind in the case. *City of St. Paul* v. *Chicago, etc., R. Co.* (1895), 63 Minn. 330, 63 N. W. 267, 65 N. W. 649, 68 N. W. 458, 34 L. R. A. 184; *Vandalia R. Co.* v. *State, ex rel.* (1906), 166 Ind. 219, 117 Am. St. 370; *Indiana Oil Co.* v. *Calvert* (1907), 168 Ind. 321, 10 L. R. A. (N. S.) 780, and cases cited. Nor is the fact without force, that no use was made of this claim of grant for more than thirty-three years, or until after the city had passed the repealing ordinance. It is argued that the grant was a continuing one, to be exercised when the necessities of appellant's business required a second track; but it may equally as well be argued that the requirement of the public in the interest of safety and accommodation in the use of the street for its primary purposes demands a restricted use by appellant, as to which the legislative authority of the city is also a reserve and continuing power, and one in the exercise of which, in the absence of fraud, or unreasonable and arbitrary action, the city council is the sole judge. *Indiana Oil Co.* v. *Calvert, supra; Gascho* v. *Sohl* (1900), 155 Ind. 417.

The case of *Vandalia R. Co.* v. *State, ex rel., supra,* and cases there and herein cited, make the distinction which obtains here, viz: That ordinance No. 62, though *quasi* contractual in the one characteristic of mutual assent in its enactment, was not enacted in carrying on the business concerns, the economic policy or the ad-

ministrative functions of the city, but was, in fact and in law, a legislative act. It is impressed with public interests and public policy. The inalienable character of this legislative power to control and regulate the use of streets for the benefit of the public, in the administration of the police power, and subject to such modification as the future necessities required was not affected by the ordinance in question. The grant was affected by the public interest and was taken subject to the exercise of the police power, and was not placed beyond municipal control. Ordinance No. 62 was ineffective as an irrevocable contract, and the restrictive ordinance was valid. Other questions are urged which, in view of our conclusions, are immaterial.

The judgment is affirmed.

## ON PETITION FOR REHEARING.

MYERS, J.—The learned counsel for appellant have presented an able and exhaustive brief upon petition for a rehearing. They urge that the court overlooked their insistence upon the allegation of the complaint, that the repealing ordinance is void, as violative of article 1, §10, of the federal Constitution, and article 1, §24, of the state Constitution, prohibiting the impairment of the obligation of contracts. They were not overlooked. On the contrary, they furnished the subject of the court's careful consideration, and the opinion seemed to be sufficiently explicit in itself, in covering such question, without pointing out the sections to indicate the basis for it. We may here add however, as pertinent to the question, the proposition that the prohibition as to impairment of contract obligations does not extend to subjects affecting the health, safety or general welfare of the public. *Chicago, etc., R. Co.* v. *Nebraska, ex rel.* (1898), 170 U. S. 57, 18 Sup. Ct. 513, 42 L. Ed. 948; *Budd* v. *New York* (1892), 143 U. S. 517, 12 Sup. Ct. 468, 36 L. Ed. 247; *Powell* v. *Pennsyl-*

*vania* (1888), 127 U. S. 678, 8 Sup. Ct. 992, 1257, 32 L. Ed. 253; *Barbier* v. *Connolly* (1885), 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923; *Butchers Union, etc., Co.* v. *Crescent City, etc., Co.* (1884), 111 U. S. 746, 4 Sup. Ct. 652, 28 L. Ed. 585; *Stone* v. *Mississippi* (1879), 101 U. S. 814, 25 L. Ed. 1079; *Slaughter-House Cases* (1872), 16 Wall. 36, 21 L. Ed. 394.

It is urged "that the court misapprehended the force of the averments of the complaint, and that the fact that a double track had been laid, and for nearly thirty years had been used, in a portion of Division street without complaint or inconvenience, is sufficient to show that ordinance No. 62 was not only authorized by statute, but that it was reasonable, and the public interests and public travel were fully and adequately protected, and that the repealing ordinance was not only unreasonable, but was wholly unnecessary." This insistence is made for the reason that the ordinance provides quite fully for the manner of operating trains, keeping up repairs on the tracks, keeping street crossings in repair, etc. This, however, as we view it, is no answer to the proposition that all such grants, as are here claimed, are subject to the exercise of the police power, which would operate irrespective of the contract, and two tracks may have long been maintained on some portion of Division street, without inconvenience to, or complaint from, the public. That establishes nothing as to the right or power of the city to determine for itself whether another portion should be obstructed, or the public inconvenienced. It may furnish an argument, but it presents no controlling fact.

It is next urged that we were in error in holding that there would necessarily be more obstruction with two tracks than with one, the argument being "that it necessarily requires twice as long to pass a given number of cars over a given portion of a single track than it does if the same volume of traffic is divided, and one-half

passes over one track, and one-half over another parallel track at the same time.'' If that were the whole of the proposition, there would seem to be force in it, but let us put a case: Suppose there are two tracks, and both are necessary to accommodate the present volume of traffic, then we might have the street occupied practically all the time by opposite moving trains, increasing both the occupancy of the street longitudinally and the crossings, and it is quite well known that safe clearance of two trains upon a double track requires from twenty to twenty-two feet, to say nothing of the danger from teams or vehicles moving longitudinally, in close proximity to moving trains. Granting that it is possible that two tracks may be laid within eighteen feet, so that trains will pass over them, that still leaves the projection of cars on each side of at least eighteen inches, or three additional feet, which is more of an obstruction in a moving train than the two tracks would be in the width occupied by them, because of the danger from projecting or falling matter, control of teams and the like. Looking to the question of practicability, as appellant insists, we cannot say, as a matter of law, that two tracks would not be an obstruction of the primary use to which the street was dedicated, which is a legislative question. *Wabash R. Co.* v. *City of Defiance* (1897), 167 U. S. 88, 17 Sup. Ct. 748, 42 L. Ed. 87; *Mayor, etc.,* v. *Baltimore Trust, etc., Co.* (1897), 166 U. S. 673, 17 Sup. Ct. 696, 41 L. Ed. 1160; *Chicago, etc., R. Co.* v. *Whiting, etc., St. R. Co.* (1894), 139 Ind. 297, 26 L. R. A. 337, 47 Am. St. 264.

We still think that the allegation of the complaint that there will be less obstruction with two tracks than with one, cannot be regarded as an allegation of a fact. Appellant's trains can be so scheduled that passing points can be arranged beyond the limits of a single track. This arrangement may require a different handling of trains from that which could be accomplished with two tracks, but we cannot be guided or controlled by considera-

tions of convenience or inconvenience, when brought face to face with the conditions here disclosed.

It is claimed that the court has ignored the rule in *White* v. *Chicago, etc., R. Co.* (1890), 122 Ind. 317, 7 L. R. A. 257. That case presented the one question of damages to an abutting owner, and no questions as to the police or legislative power of the city, as to the width of the street, the degree of interference with its use, or the sufficiency of the unoccupied portion for the usual purposes of a street were presented or decided.

It is next urged that the ordinance attempts "to take away the right of plaintiff to use even the portion of the street already occupied by it under the consent given by the ordinance for double tracks," and "that the opinion seems to go upon the theory that this ordinance repeals only the privilege to lay a double track on that part of the street for which the privilege was given, on which the track was already laid." The brief on petition for rehearing is the first intimation of any claim that the ordinance seeks to take away the right to use the portion of the street now occupied by a double track. We do not mean to hold that there might not be such a right, but no such claim of right is asserted or intimated prior to the filing of the brief on petition for rehearing. We recur to the complaint, in which it is alleged that on January 1, 1881, a double track was laid on Division street between the St. Joseph river and Michigan street, and has ever since been used by appellant; that the ordinance of October 14, 1901, attempted to repeal so much of ordinance No. 62 as gives the right to lay a second track in said street, and that when an attempt was made by appellant on October 6, 1902, to lay a track west on Division street to General Taylor street, it was prevented, and there is no pretense of an attempt to interfere with or a claim of right to interfere with the double track now laid, and the prayer of the

complaint is that appellees be "enjoined from in any way hindering or preventing plaintiff from laying said additional track, as aforesaid." We were clearly correct in our theory that only the question of laying the additional track was involved.

"The public necessity of the exercise of the police power in any case is a matter addressed to the discretion of the legislature; but whether a given regulation is a reasonable restriction upon personal rights is a judicial question." 2 Tiedeman, State and Fed. Control §214. See, also, *Ladd v. Southern, etc., Mfg. Co.* (1880), 53 Tex. 172; *Chicago, etc., R. Co. v. People, ex rel.* (1873), 67 Ill. 11, 16 Am. Rep. 599; *Toledo, etc., R. Co. v. City of Jacksonville* (1873), 67 Ill. 37, 16 Am. Rep. 611; *City of Erie v. Erie Canal* (1868), 59 Pa. St. 174; *State, etc., R. Co. v. East Orange* (1879), 41 N. J. L. 127. "What are reasonable regulations, and what are the subjects of police powers, must necessarily be judicial questions. The law-making power is the sole judge when the necessity exists, and when, if at all, it will exercise the right to enact such laws." *Toledo, etc., R. Co. v. City of Jacksonville, supra.* Referring to the act requiring the sounding of whistles at highway crossings, it was said in the case of *Pittsburgh, etc., R. Co. v. Brown* (1879), 67 Ind. 45, 33 Am. Rep. 73, that "the necessity and propriety of the enactment in question were exclusively for the legislature, and not for the courts, to pass upon." In 2 Redfield, Railways (5th ed.) 461, in speaking of the same requirement, it is said: "Of the importance or necessity of which the legislature must be the judge."

It is urged that our opinion is not supported by the cases of *Lake Roland, etc., R. Co. v. Mayor, etc.* (1893), 77 Md. 352, 26 Atl. 510, 20 L. R. A. 126, and *Mayor, etc., v. Baltimore Trust, etc., Co.* (1897), 166 U. S. 673, 17 Sup. Ct. 696, 41 L. Ed. 1160, for the reason that both cases arose under the same ordinance, and "the state court found and held that

NOVEMBER TERM, 1909.     227

Grand Trunk, etc., R. Co. *v.* City of South Bend—174 Ind. 203.

the power of the city council to amend or modify or re-
peal its ordinance was expressly written in the statute of
the state authorizing the passage of such ordinance.'' This
insistence was made when the case was originally before
us, and we are unable to discover any authority for it. We
have gone over the matter again in an attempt to discover
whether we were in error in our understanding of those
cases. The legislative act was a curative and ratifying
act, ratifying the ordinance after its passage, and conclud-
ing with the declaration: ''The said mayor and city coun-
cil to have the same power and control hereafter in refer-
ence to the enforcement, amendment, or repeal of said or-
dinance as it has or would have in respect to any ordinance
passed under its general powers'' (Acts 1892 [Md.] Chap.
112.) There was no general statute authorizing amend-
ment or repeal, and there was no right of repeal reserved
in the ordinance itself, and this clause was no more than
the statement of the common law, so far as the police power
was involved. It was not urged by counsel that there was
any reserve right of repeal in the ordinance or under any
statute, and the case is not·predicated upon any reserve
right of repeal. The court said: ''The repealing ordi-
nance was passed because, as stated in the preamble, the
city council thought that it was required by 'the public
safety and convenience, and proper regulation of the use
of the streets.' These considerations for the repeal were
within their legislative judgment and discretion, and the
evidence shows that the ordinance has 'a real and substan-
tial relation' to the objects proposed. It is therefore not
subject to supervision or review by the courts.'' *Lake Ro-
land, etc., R. Co.* v. *Mayor, etc.* (1893), 77 Md. 352, 380.
''It has been well said in reference to such general grants
of power that as to the degree of necessity for municipal
legislation on subjects committed to their charge, the mayor
and ·city council are the exclusive judges, while the selec-
tion of the means and manner (contributory to the end)

Grand Trunk, etc., R. Co. *v.* City of South Bend—174 Ind. 203.

of exercising the powers which they may deem requisite to the accomplishment of the objects of which they are made the guardians, is committed to their sound discretion." *Mayor, etc.,* v. *Radecke* (1878), 49 Md. 217, 33 Am. Rep. 239.

In the case of *Gloucester Ferry Co.* v. *Pennsylvania* (1885), 114 U. S. 196, 5 Sup. Ct. 826, 29 L. Ed. 158, it is said: "The power to regulate commerce * * * is the power to prescribe the rules by which it shall be governed, that is, the conditions upon which it shall be conducted." In the case of *Mayor, etc.,* v. *Baltimore Trust, etc., Co., supra,* it is said: "If it be said in this case that the city had already regulated the use by prescribing that there should be·two tracks, the answer is that this power of regulation is a continuing power; it is not exhausted by being once exercised, and so long as the object is plainly one of regulation, the power may be exercised as often as and whenever the common council may think proper; the use of the street may be subjected to one condition to-day, and to another and additional one to-morrow, provided the power is exercised in good faith and the condition imposed is appropriate as a reasonable regulation, and is not imposed arbitrarily or capriciously."

There is here no charge of bad faith, or arbitrary or capricious imposition, nor any allegation disclosing the reason for the action of the council, and we must assume that there was some reason for it. The presumption is in favor of the reasonableness of the council's action, unless the contrary appears on the face of the ordinance, or is disclosed by the complaint. *Schmidt* v. *City of Indianapolis* (1907), 168 Ind. 631, 14 L. R. A. (N. S.) 787, 120 Am. St. 385; *City of Indianapolis* v. *Bieler* (1894), 138 Ind. 30; *State, ex rel.,* v. *White* (1882), 82 Ind. 278, 42 Am. Rep. 496; *Trenton Horse R. Co.* v. *Trenton* (1890), 53 N. J. L. 132, 20 Atl. 1076, 11 L. R. A. 410; *Mayor, etc.,* v. *Clunet* (1865), 23 Md. 467; *Van Hook* v. *City of Selma*

(1881), 70 Ala. 361, 45 Am. Rep. 85; *Mayor, etc.,* v. *Alabama, etc., R. Co.* (1892), 98 Ala. 134, 13 South. 141, 46 Am. and Eng. Corp. Cas. 631; *People* v. *Detroit United Railway* (1903), 134 Mich 682, 97 N. W. 36, 104 Am. St. 616, 63 L. R. A. 746; *City of St. Louis* v. *Western Union Tel. Co.* (1894), 63 Fed. 68; *Illinois Cent. R. Co.* v. *City of Chicago* (1897), 169 Ill. 329, 48 N. E. 492; *Larkin* v. *Burlington, etc., R. Co.* (1892), 85 Iowa 492, 52 N. W. 480; *Stafford* v. *Chippewa, etc., R. Co.* (1901), 110 Wis. 331, 85 N. W. 1036.

We cannot say that an ordinance is unreasonable which would restrict to one track the number of railroad tracks on a street, for a distance of three or four squares, when more than one might tend to interfere with the free use of the street by the general public, or affect the security of life or property in its use. *People, ex rel.,* v. *Fort Wayne, etc., R. Co.* (1892), 92 Mich. 522, 52 N. W. 1010, 16 L. R. A. 752; *Detroit City Railway* v. *Mills* (1891), 85 Mich. 634, 48 N. W. 1007; *Street R. Co., etc.,* v. *West Side St. R. Co., etc.* (1882), 48 Mich. 433, 12 N. W. 643; *Dubach* v. *Hannibal, etc., R. Co.* (1886), 89 Mo. 483, 1 S. W. 86; *Commonwealth* v. *City of Frankfort* (1891), 92 Ky. 149, 17 S. W. 287.

Reduced to its last analysis, the proposition is this: Does a complaint, which alleges that a street is eighty-two and one-half feet in width, without any allegation as to the width of the roadway, that the obstruction of such street will be much less with two tracks than with one, and that there is ample room for general travel, without any showing as to the conditions or requirements of travel on such street, or any improper motive in the council's action, and which is predicated upon the necessities of the railway from the increased volume of traffic upon an extensive main line of railway which is being double-tracked, and which it is sought to double-track through a portion of the street, make such a case that the court can

230    SUPREME COURT OF INDIANA,

Grand Trunk, etc., R. Co. *v.* City of South Bend—174 Ind. 203.

say, as a matter of law, that to restrict the line to a single track for a distance of three or four squares is an unreasonable regulation, under a statute which provides that "the common council shall have exclusive power over the streets, highways, alleys and bridges, within such city" (Acts 1867 p. 33, §61, 3 Davis Supp. p. 94), and another section thereof which provides that the common council shall have power "to provide by ordinance for the security of citizens and others from the running of trains through any city, and to require railroad corporations to observe the same" (Acts 1867 p. 33, §53, subd. 42, 3 Davis Supp. p. 88), or which overcomes the presumption of the actions being reasonable, and based upon sufficient grounds, and within the discretion of the city authorities? Suppose the city should see fit to prohibit the propelling of cars over the street by steam? It would result in quite as serious inconvenience, we may well suppose, to appellant, even if it had two tracks, as the restriction to one track; yet such power is undeniable, and we could not set up our judgment as to its being unreasonable. *Washington, etc., R. Co.* v. *City Council, etc.* (1900), 98 Va. 344, 36 S. E. 385; *State* v. *Mayor, etc.* (1861), 29 N. J. L. 170; *Great Western R. Co.* v. *City of Decatur* (1864), 33 Ill. 381; *Philadelphia* v. *Lombard, etc., R. Co.* (1863), 3 Grant's Cas. (Pa.) 403; *State* v. *Mayo* (1909), 75 Atl. (Me.) 295; *State* v. *Tupper* (1838), Dud. L. (S. C.) 135; *Inhabitants, etc.,* v. *Mayo* (1858), 45 Me. 560; 2 Redfield, Railways (5th ed.) *564; 3 Elliott, Railroads (2d ed.) §1096n and notes. Renewed attention to and reconsideration of the subject fails to lead us to any other conclusion than that previously announced.

The petition for a rehearing is overruled.